## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NIRVANIX, INC. | Case No. 13-13-12595 (BLS) |
| Debtor.[1] | |
| | Related Docket No. 12 |

## INTERIM ORDER (I) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION SECURED FINANCING, (II) AUTHORIZING USE OF CASH COLLATERAL, (III) GRANTING ADEQUATE PROTECTION, (IV) SCHEDULING FINAL HEARING, AND (V) GRANTING CERTAIN RELATED RELIEF

Upon the motion dated October 1, 2013 (the "Motion"), seeking entry of an interim order (this "Interim Order"), *inter alia*,

(a)     authorizing Nirvanix, Inc. (the "Debtor") to obtain secured postpetition superpriority financing (the "DIP Facility") on an interim basis from its Prepetition Lenders (as defined below) pursuant to the terms and conditions of that certain *Priming Superpriority Debtor-in-Possession Credit Facility Term Sheet* dated as of October 1, 2013, by and among the Debtor and each lender party thereto (collectively, the "DIP Lenders"), attached hereto as **Exhibit A** (as amended, supplemented, restated or otherwise modified from time to time in accordance therewith, the "DIP Term Sheet," and together with the other documents, agreements and instruments delivered pursuant thereto or executed or filed in connection therewith, all as may be reasonably requested by the DIP Lenders (as the same may be amended, supplemented, restated or otherwise modified from time to time, the "DIP Loan Documents"));[2]

(b)     authorizing the Debtor to execute the DIP Loan Documents, and to perform such other acts as may be necessary or desirable in connection therewith,

(c)     granting to the DIP Lenders first priority security interests in and liens on all of the DIP Collateral (as defined below) to secure the DIP Facility and all obligations owing and outstanding thereunder and under the DIP Loan Documents, as applicable, and this Interim Order and Final Order (as defined below), as applicable (collectively, the "DIP Loan Obligations");

---

[1]  The last four digits of the Debtor's federal tax identification number are 6586.

[2]  Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in the DIP Term Sheet.

(d)     granting allowed superpriority administrative expense claims to the DIP Lenders;

(e)     authorizing the Debtor to use Cash Collateral (as defined below) (together with the DIP Facility, the "Postpetition Financing Arrangement");

(f)     authorizing the Debtor to grant adequate protection to TriplePoint Capital LLC ("TriplePoint"), in its individual capacity as a lender under various loan facilities and in its capacity as collateral agent (in such capacity, the "Prepetition Collateral Agent") for Khosla Ventures IV, LP and Khosla Ventures IV (CF), LP (collectively, "KV"; together with TriplePoint, the "Prepetition Lenders"), as lenders under the *Note Purchase Agreement* dated August 8, 2013, as amended, restated, supplemented or otherwise modified from time to time (the "Bridge Loan Agreement"), pursuant to which KV agreed to make bridge loans to Nirvanix (collectively, the "Bridge Loans"); and

(g)     scheduling a hearing (the "Final Hearing"), pursuant to Rule 4001(c)(2) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to consider entry of a final order (the "Final Order"), *inter alia*, approving and authorizing the Postpetition Financing Arrangement (including, without limitation, the advance of the financing pursuant to this Interim Order) on a final basis pursuant to the DIP Loan Documents;

and the interim hearing on the Motion (the "Interim Hearing") having been held on October 4, 2013; and upon all of the pleadings filed with the Court and the evidence proffered or adduced at the Interim Hearing; and the Court having heard and resolved or overruled any and all objections to the interim relief requested in the Motion; and it appearing that the relief requested in the Motion is in the best interests of the Debtor, its estate, and creditors; and upon the record herein; and after due deliberation thereon, and good and sufficient cause appearing therefor:

**IT IS HEREBY FOUND AND DETERMINED THAT:[3]**

A.     Petition Date. On October 1, 2013 (the "Petition Date"), the Debtor commenced its chapter 11 case (the "Chapter 11 Case") by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtor is operating its

---

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, as applicable, pursuant to Bankruptcy Rule 7052.

business and managing its affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date hereof, no trustee, examiner, or official committee of creditors holding unsecured claims (a "Creditors' Committee") has been appointed in the Chapter 11 Case.

B.    Jurisdiction; Venue. The Court has jurisdiction over this Chapter 11 Case, the parties, and the Debtor's property pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(D). The Court is a proper venue of this Chapter 11 Case and the Motion under 28 U.S.C. §§ 1408 and 1409.

C.    Notice. Notice of the Motion has been provided to: (i) the Office of the United States Trustee; (ii) the Office of the United States Attorney for the District of Delaware; (iii) the Internal Revenue Service; (iv) the Debtor's twenty largest unsecured creditors; (v) counsel to TriplePoint; (vi) counsel to KV, and (vii) all other known parties asserting a lien against the Debtor's assets; by telecopy, email, overnight courier and/or hand delivery. Because of the nature of the relief requested, the Debtor respectfully submits that no other or further notice of the relief requested in this Motion need be given.

D.    Debtor's Acknowledgments and Stipulations. In requesting the Postpetition Financing Arrangement, and in exchange for and as a material inducement to the DIP Lenders and the Prepetition Lenders to agree to provide the Postpetition Financing Arrangement, the Debtor acknowledges, represents, stipulates, and agrees, subject to the challenge rights set forth in paragraph 15 herein, as follows:

(i)    The Debtor and TriplePoint are parties to the following documents:
(1) *Plain English Growth Capital and Accounts Receivable Loan and Security Agreement* dated as of August 21, 2012, as amended, restated, supplemented or otherwise modified from time to

time (the "Growth Capital and A/R Loan Agreement"), pursuant to which TriplePoint has made

growth capital loans to the Debtor in the aggregate original principal amount of $3,000,000 and

accounts receivable loans to the Debtor in the aggregate original principal amount of $2,000,000

(the "Growth Capital and A/R Loan Facility"); (2) *Plain English Equipment Loan and Security*

*Agreement* dated as of August 21, 2012, as amended, restated, supplemented or otherwise

modified from time to time (the "Equipment Loan Agreement"), pursuant to which TriplePoint

made equipment loans to the Debtor in an aggregate original principal amount of $546,619.98

(the "Equipment Loan Facility"); (3) *Plain English Master Lease Agreement* dated as of August

21, 2012, and the associated Hardware Facility Schedule, Software Facility Schedule and

Summary Schedules, as amended, restated, supplemented or otherwise modified from time to

time (the "Equipment Lease Agreement"), pursuant to which TriplePoint made equipment leases

to the Debtor in the aggregate original amount of $1,786,804.74 (the "Equipment Lease

Facility", together with the Growth Capital and A/R Loan Facility and the Equipment Loan

Facility, collectively, the "TriplePoint Facilities"); and (4) *Restructuring Agreement* dated as of

January 17, 2013, as amended by the *First Amendment to Restructuring Agreement* dated as of

July 29, 2013, and the *Second Amendment to Restructuring Agreement* dated August 8, 2013

(collectively, the "Restructuring Agreements"), pursuant to which TriplePoint agreed to

(a) restructure certain of Company's obligations to TriplePoint under the TriplePoint Facilities;

and (b) make protective advances under the Growth Capital and A/R Loan Agreement in an

aggregate amount of up to $1,500,000.

        (ii)     The Debtor and KV are parties to the Bridge Loan Agreement, pursuant to

which KV agreed to make bridge loans to the Debtor in an aggregate amount not to exceed

$2,257,832 evidenced by one or more Senior Secured Promissory Notes of the Debtor (the

"Bridge Loan Facility"). The Debtor's obligations under the Bridge Loan Agreement and the other related agreements are secured by a security interest in substantially all assets of the Debtor pursuant to that certain *Security Agreement* dated as of August 8, 2013, between the Debtor, TriplePoint as collateral agent, and KV, in its capacity as Prepetition Lender, as the same may be further amended, restated, supplemented or otherwise modified from time to time. Pursuant to the *Agreement Among Lenders* dated as of August 8, 2013, TriplePoint and KV agreed to the priority of the parties' respective liens arising under the TriplePoint Facilities and the Bridge Loan Facility, and such agreement remains in full force and effect. For all purposes herein, (i) the lenders under the TriplePoint Facilities and the lenders under the Bridge Loan Facility are collectively referred to as the "Prepetition Lenders" and (2) the Growth and A/R Loan Agreement, the Equipment Loan Agreement, the Equipment Lease Agreement, the Restructuring Agreements, and the Bridge Loan Agreement, together with all agreements, documents, notes, security agreements, pledges, instruments, amendments, and any other agreements delivered pursuant thereto or in connection therewith, are collectively referred to as the "Prepetition Loan Documents").

(iii)    All of the Debtor's obligations to the Prepetition Lenders under the TriplePoint Facilities, the Restructuring Agreements, and the Bridge Loan Facility (the "Prepetition Obligations") are secured by first priority liens (the "Prepetition Liens") granted to TriplePoint, for itself and as the Prepetition Collateral Agent (for the ratable benefit of the lenders under the Bridge Loan Facility) on substantially all of the Debtor's assets (including Cash Collateral, as defined below) as set forth in the Prepetition Loan Documents, whether then owned or existing or thereafter acquired. All "Collateral" as defined in the Prepetition Loan

Documents granted or pledged by the Debtor pursuant to any of the Prepetition Loan Documents shall be collectively referred to as the "Prepetition Collateral."

(iv)    as of September 30, 2013, (a) the aggregate amount of principal, accrued interest and fees owed under the Growth Capital and A/R Loan Facility to TriplePoint is $5,471,757, which does not include attorneys' fees reimbursable under the Growth Capital and A/R Loan Agreement, or any amount payable to the Prepetition Collateral Agent in its capacity as such, (b) the aggregate amount of principal, accrued interest and fees owed under the Equipment Loan Facility to TriplePoint is $594,014, which does not include attorneys' fees reimbursable under the Equipment Loan Agreement, or any amount payable to the Prepetition Collateral Agent in its capacity as such; (c) the aggregate of obligations owed under the Equipment Lease Facility to TriplePoint is $2,750,657, which does not include attorneys' fees reimbursable under the Equipment Lease Agreement, or any amount payable to the Prepetition Collateral Agent in its capacity as such; (d) the aggregate amount of principal and accrued interest owed to TriplePoint on account of the protective advances under the Restructuring Agreements is $1,315,243, which does not include attorneys' fees reimbursable under the Restructuring Agreements, or any amount payable to the Prepetition Collateral Agent in its capacity as such; (e) the aggregate amount of principal and accrued interest owed under the Bridge Loan Facility to KV is $1,773,483.37, which does not include attorneys' fees reimbursable under the Bridge Loan Agreement, or any amount payable to the Prepetition Collateral Agent in its capacity as such; (f) all of the Prepetition Obligations are unconditionally owing by the Debtor to the Prepetition Lenders, and (c) the Prepetition Obligations are not subject to any avoidance, reductions, set-off, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other

challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity, except as set forth in paragraph 15 herein;

(v)     the Prepetition Liens constitute valid, binding, enforceable, and perfected liens with priority over any and all other liens and are not subject to any challenge or defense, including, without limitation, respectively, avoidance, reductions, recharacterization, subordination (whether equitable, contractual or otherwise), claims, counterclaims, cross-claims, offsets, defenses or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity, except as set forth in paragraph 15 herein;

(vi)     the Debtor has waived, discharged and released any right it may have to challenge the Prepetition Obligations, and the Prepetition Liens on the Prepetition Collateral, and to assert any offsets, defenses, claims, objections, challenges, and/or causes of action against the Prepetition Collateral Agent or the Prepetition Lenders, with respect to the Prepetition Obligations, the Prepetition Liens, or the Prepetition Collateral;

(vii)     any payments made on account of the Prepetition Obligations before the Petition Date were (a) payments out of the Prepetition Collateral, (b) made in the ordinary course of business and (c) did not diminish any property otherwise available for distribution to unsecured creditors;

(viii)     all of the Debtor's cash, including the cash in its deposit accounts and other accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitutes Cash Collateral (as defined below); and

(ix)     upon approval of this Interim Order by the Court, the Debtor has obtained all authorizations, consents and approvals required to be obtained from, and has made all filings with and given all notices required to be given to, all federal, state and local governmental

agencies, authorities and instrumentalities in connection with the execution, delivery, validity and enforceability of the DIP Loan Documents and the use of Cash Collateral to which the Debtor is a party;

(x)    until such time as all DIP Loan Obligations are indefeasibly paid in full in cash, the Debtor shall not in any way prime or seek to prime (or otherwise cause to be subordinated in any way) the liens provided to the DIP Lenders by offering a subsequent lender or any party-in-interest a superior or *pari passu* lien or claim with respect to the DIP Collateral pursuant to section 364(d) of the Bankruptcy Code, or otherwise, except with respect to (a) Permitted Liens (as defined in the DIP Loan Documents) and (b) the Carve-Out (as defined below);

(xi)    until such time as all DIP Loan Obligations are indefeasibly paid in full in cash, the Debtor shall not in any way or at any time permit to exist an administrative expense claim against the Debtor of any kind or nature whatsoever that is superior to or *pari passu* with the DIP Superpriority Claim (as defined below) provided herein, except with respect to the Carve-Out;

(xii)    the Prepetition Collateral Agent and the Prepetition Lenders are entitled, pursuant to sections 361, 363(e), and 364(d)(l) of the Bankruptcy Code, to adequate protection of their respective interests in the Prepetition Collateral, including the Cash Collateral in exchange for (a) the incurrence of the priming DIP Loan Obligations, (b) the use of Cash Collateral, (c) the granting of the DIP Liens and the DIP Superpriority Claim, (d) the subordination of the Prepetition Obligations to the Carve-Out, (e) any diminution in the value of the Prepetition Collateral, and (f) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.

E.    Cash Collateral.  For purposes of this Interim Order, the term "Cash Collateral" shall mean and include all "cash collateral," as defined in section 363 of the Bankruptcy Code, in or on which TriplePoint has for itself or as Prepetition Collateral Agent for the ratable benefit of the Prepetition Lenders, a lien, security interest or other interest (including, without limitation, any adequate protection liens or security interests) whether existing on the Petition Date, arising pursuant to this Interim Order, or otherwise and shall include, without limitation:

(i)    all cash proceeds arising from the collection, sale, lease or other disposition, use or conversion of any property, insurance policies, or in or on which the Prepetition Lenders have, a lien or a replacement lien, whether as part of the Prepetition Collateral or pursuant to an order of the Court or applicable law or otherwise, and whether such property has been converted to cash, existed as of the commencement of this Chapter 11 Case, or arose or was generated thereafter;

(ii)    all of the respective deposits, refund claims and rights in retainers of the Debtor on which TriplePoint holds for itself or as the Prepetition Collateral Agent for the ratable benefit of the Prepetition Lenders, or in or on which the Prepetition Lenders have, a lien or replacement lien, whether as part of the Prepetition Collateral or pursuant to an order of the Court or applicable law or otherwise;

(iii)    the proceeds of any sale of DIP Collateral or Prepetition Collateral in connection with any sale consummated prior to entry of the Final Order.

F.    Adequate Protection.  The Prepetition Collateral Agent and the Prepetition Lenders are each entitled, pursuant to sections 361, 363(e), and 364(d)(l) of the Bankruptcy Code, to adequate protection to the extent of any diminution in the value of their respective

interests in the Prepetition Collateral, including the Cash Collateral, resulting from, among other things, (a) the incurrence of the priming DIP Loan Obligations, (b) the use of Cash Collateral, (c) the granting of the DIP Liens and the DIP Superpriority Claim, (d) the subordination of the Prepetition Obligations to the Carve-Out, and (e) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.

G.    Purpose and Necessity of Financing.  As discussed in the Motion, the Debtor requires the financing under the DIP Facility (the "DIP Loans") (i) to maximize and preserve the value of its business pending the sale of substantially all of its assets, satisfy payroll obligations and for other working capital and general corporate purposes of the Debtor consistent with the terms set forth in the DIP Loan Documents and the Approved Budget (as defined below), and (ii) to pay fees and expenses related to this Chapter 11 Case.  If the Debtor does not obtain authorization to borrow under the DIP Loan Documents, it will suffer immediate and irreparable harm.  The Debtor is unable to obtain adequate unsecured credit allowable as an administrative expense under section 503 of the Bankruptcy Code, or other sufficient financing under sections 364(c) or (d) of the Bankruptcy Code, on equal or more favorable terms than those set forth in the DIP Loan Documents, based on the totality of the circumstances.  A loan facility in the amount provided by the DIP Loan Documents is not available to the Debtor without granting the DIP Lenders superpriority claims, liens, and security interests, pursuant to sections 364(c)(1), 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, as provided in this Interim Order and the DIP Loan Documents.  After considering alternatives, the Debtor has concluded, in the exercise of its sound business judgment, that the Postpetition Financing Arrangement, including, without limitation, the Interim DIP Loan, represents the best financing available to the Debtor at this time.

H.    Good Cause Shown.  Good cause has been shown for entry of this Interim Order.  The ability of the Debtor to obtain sufficient working capital and liquidity under the DIP Loan Documents is vital to the Debtor's estate and creditors.  The liquidity to be provided under the DIP Loan Documents will enable the Debtor to preserve the value of the Debtor's business pending the sale of its assets.  Among other things, entry of this Interim Order is necessary to maximize the value of the Debtor's assets and to avoid immediate and irreparable harm to the Debtor and its estate, and, accordingly, is in the best interests of the Debtor, its estate and its creditors.

I.    Sections 506(c) and 552(b) Waivers.  In light of (i) the DIP Lenders' agreement to subordinate their liens and superpriority claims to the Carve-Out, and in exchange for and as a material inducement to the DIP Lenders to agree to provide the DIP Facility and (ii) the Prepetition Collateral Agent and the Prepetition Lenders' subordination of their liens and superpriority claims to the Carve-Out and the DIP Liens, and use of their Cash Collateral, the DIP Lenders, the Prepetition Collateral Agent and the Prepetition Lenders (collectively, the "Secured Parties") are each entitled to (1) a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code and (2) subject to entry of the Final Order, a waiver of the provisions of section 506(c) of the Bankruptcy Code.

J.    Good Faith.  The terms of the DIP Loan Documents are more favorable to the Debtor than those available from alternative sources.  Based upon the record before the Court, the DIP Loan Documents have been negotiated in good faith and at arm's-length among the DIP Lenders and the Debtor.  Any DIP Loans and other financial accommodations made to the Debtor by the DIP Lenders pursuant to the DIP Loan Documents and this Interim Order shall be deemed to have been extended by the DIP Lenders in good faith, as that term is used in

section 364(e) of the Bankruptcy Code, and the DIP Lenders shall be entitled to all protections and benefits afforded thereby.

        K.    <u>Fair Consideration and Reasonably Equivalent Value</u>. The Debtor has received and will receive fair consideration and reasonable value in exchange for access to the DIP Loans and all other financial accommodations provided under the DIP Loan Documents and this Interim Order. The terms of the DIP Loan Documents are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

        L.    <u>Immediate Entry of Interim Order</u>. The Debtor has requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2). The permission granted herein to enter into the DIP Loan Documents and to obtain funds thereunder is necessary to avoid immediate and irreparable harm to the Debtor. This Court concludes that entry of this Interim Order is in the best interests of the Debtor's estate and creditors as its implementation will, among other things, allow for access to the financing necessary to sustain the continued operations of the Debtor and further enhance the Debtor's prospects of a reorganization or for a successful sale of substantially all of its assets. Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

        1.    <u>Disposition</u>. The Motion is granted on an interim basis on the terms set forth in this Interim Order. Any objection to the interim relief sought in the Motion that has not previously been withdrawn or resolved is hereby overruled on its merits. The term of this Interim Order, the DIP Loan Documents, and the use of Cash Collateral authorized hereunder shall expire, and the DIP Loans made pursuant to this Interim Order and the DIP Loan

Documents will mature, and together with all interest thereon and any other obligations accruing

under the DIP Loan Documents, will become due and payable (unless such obligations become

due and payable earlier pursuant to the terms of the DIP Loan Documents and this Interim Order

by way of acceleration or otherwise) on the earlier of (a) October 26, 2013 if the Final Order has

not been entered by the Court prior to such date, and (b) upon the occurrence of a Termination

Event (as defined below).

### AUTHORIZATION FOR DIP FINANCING AND USE OF CASH COLLATERAL

      2.      Authorization for DIP Financing and Use of Cash Collateral.

          (a)    The Debtor is hereby authorized, on an interim basis, to incur the DIP

Obligations immediately subject to the terms of this Interim Order, the Approved Budget, and

the DIP Loan Documents, in the aggregate during the period prior to the entry of the Final

Order of up to $1,100,000 as provided in the Approved Budget (the "Maximum

Commitment"). Available financing and advances under the DIP Loan Documents shall, on

an interim basis, be made only as permitted in the Approved Budget and the DIP Loan

Documents. The Debtor is authorized to use Cash Collateral subject to and in accordance with

the terms, conditions, and limitations set forth in this Interim Order, the Approved Budget and

the DIP Loan Documents, without further approval by the Court.

          (b)    Approved Budget. The Debtor has delivered to the DIP Lenders a budget

that has been approved by each of the DIP Lenders (the "Approved Budget") for the time

period from and including the Petition Date through October 26, 2013. A copy of the

Approved Budget is attached hereto as **Exhibit B**. The Debtor shall provide to the DIP

Lenders and the Prepetition Lenders updates to the Approved Budget and financial reporting

with respect to the Debtor in accordance with the terms of the DIP Loan Documents. The

consent of the DIP Lenders to the Approved Budget shall not be construed as a commitment to provide DIP Loans or to permit the use of Cash Collateral after the occurrence of a Termination Event (as defined below), regardless of whether the aggregate funds shown on the Approved Budget have been expended.

(c)    By not later than three (3) business days after the end of the week following the Petition Date, the Debtor shall deliver to the DIP Lenders a variance report in form and substance acceptable to each of the DIP Lenders and the Prepetition Lenders in their sole and absolute discretion (an "Approved Variance Report") showing comparisons of actual results for each line item against such line item in the Approved Budget.  Thereafter, the Debtor shall deliver to the DIP Lenders and the Prepetition Lenders, by not later than three (3) business days after the close of each weekly period after the Petition Date, an Approved Variance Report for the trailing four (4) week period (or, if fewer than four weeks have lapsed since the Petition Date, then for the trailing one, two or three week period, as applicable). Each Approved Variance Report shall indicate whether there are any adverse variances that exceed the "Permitted Variances," which means, in each case measured on a cumulative basis: (x) up to 10% on a line-item basis, or (y) 10% in the aggregate for all Cash Receipts and Cash Disbursements ("Permitted Variances").

(d)    Any amendments, supplements or modifications to the Approved Budget or an Approved Variance Report, must be consented to in writing by the DIP Lenders in their sole discretion prior to the implementation thereof and shall not require further notice, hearing, or court order.

(e)    The Secured Parties (i) may assume the Debtor will comply with the Approved Budget, (ii) shall have no duty to monitor such compliance and (iii) shall not be

obligated to pay (directly or indirectly from the DIP Collateral or Prepetition Collateral) any unpaid expenses incurred or authorized to be incurred pursuant to the Approved Budget, except the Carve-Out as permitted this Interim Order.

(f)    Subject to entry of a Final Order, to the extent any court order is entered directing disgorgement of any payments made by the Debtor to the Prepetition Collateral Agent or the Prepetition Lenders, either before or after the Petition Date, all proceeds recovered by the Debtor's estate in connection with such order(s) directing disgorgement shall be applied first to repayment of the DIP Loan Obligations until the DIP Loan Obligations are indefeasibly paid in full in cash.

3.    <u>Authority to Execute and Deliver Necessary Documents</u>.

(a)    The Debtor is authorized to negotiate, prepare, enter into, and deliver the DIP Loan Documents, including, without limitation, any UCC financing statements, pledge and security agreements, and mortgages or deeds of trust encumbering all of the DIP Collateral and securing all of the Debtor's obligations under the DIP Loan Documents, each as may be reasonably requested by the DIP Lenders.

(b)    The Debtor is further authorized to negotiate, prepare, enter into and deliver the DIP Loan Documents, as contemplated by the DIP Term Sheet, subject to approval of the Court and entry of the Final Order.

(c)    The Debtor is further authorized to perform all of the obligations and acts required under the DIP Loan Documents, and such other agreements as may be required by the DIP Loan Documents to give effect to the terms of the financing provided for therein, and in this Interim Order.

4.    <u>Valid and Binding Obligations</u>.  All obligations under the DIP Loan Documents shall constitute valid and binding obligations of the Debtor, enforceable against it and its successors and assigns, in accordance with the terms of the DIP Loan Documents and of this Interim Order, and no obligation, payment, transfer, or grant of a lien or security interest under the DIP Loan Documents or this Interim Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code) or subject to any avoidance, reduction, set off, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity.

5.    <u>Reserved</u>

6.    <u>Amendments, Consents, Waivers, and Modifications</u>.  The Debtor, with the express written consent of the DIP Lenders, may enter into any non-material amendments, consents, waivers or modifications to the DIP Loan Documents without the need for further notice, hearing or any order of this Court.  Material amendments, consents, waivers, and modifications of the DIP Loan Documents shall require the express written consent of the DIP Lenders.

## DIP LIENS AND DIP SUPERPRIORITY CLAIMS

7.    <u>DIP Lenders' Lien Priority</u>.

(a)    To secure the DIP Loan Obligations, the DIP Lenders are hereby granted, pursuant to sections 364(c)(2), 364(c)(3) (solely as to the Permitted Liens), and 364(d)(1), valid, enforceable and fully perfected, first priority priming liens on and senior security interests in (collectively, the "<u>DIP Liens</u>") all of the property, assets or interests in property or

assets of the Debtor, and all "property of the estate" (within the meaning of the Bankruptcy Code) of the Debtor, of any kind or nature whatsoever, real or personal, tangible or intangible or mixed, now existing or hereafter acquired or created, including, without limitation, all of the Debtor's now owned or hereafter acquired right, title, and interest in and to all cash, accounts (including account SVB CD and SVB MMA), accounts receivable, inventory, property, plant and equipment, real estate, leaseholds, vehicles, general intangibles, intellectual property, customer lists,  avoidance actions under chapter 5 of the Bankruptcy Code and its recoveries ("Avoidance Actions") (subject to entry of the Final Order), all claims, and causes of action of the Debtor or its estate (including, without limitation, all commercial tort claims of every kind and description, whether described in specificity in the DIP Term Sheet or not), any and all proceeds arising from insurance policies, all intellectual property, and the equity interests of each direct and indirect subsidiary of Debtor, which for the avoidance of doubt, shall include, without limiting the generality of the foregoing, all assets of the Debtor that are secured pursuant to the Prepetition Loan Documents, and all other property and assets including, without limitation, Cash Collateral, and all cash and non-cash proceeds, rents, products, substitutions, accessions, offspring and profits of any of the collateral described above (collectively, the "DIP Collateral"), subject only to (A) the Permitted Liens, and (B) the Carve-Out.

       (b)   The DIP Liens shall be effective immediately upon the entry of this Interim Order and shall not at any time be made subject or subordinated to, or made *pari passu* with, any other lien, security interest or claim existing as of the Petition Date, or created under sections 363 or 364(d) of the Bankruptcy Code or otherwise, other than (i) the Permitted Liens and (ii) the Carve-Out.

(c)    The DIP Liens shall be and hereby are deemed fully perfected liens and security interests, effective and perfected upon the date of this Interim Order, without the necessity of execution by the Debtor of mortgages, security agreements, pledge agreements, financing agreements, financing statements or any other agreements or instruments, such that no additional actions need be taken by the DIP Lenders, or any other person or entity to perfect such interests.

8.    <u>DIP Lenders' Superpriority Claim</u>.  The DIP Lenders are hereby granted and allowed a superpriority administrative expense claim (the "<u>DIP Superpriority Claim</u>") pursuant to section 364(c)(1) of the Bankruptcy Code in the Debtor's Chapter 11 Case and in any successor case under the Bankruptcy Code (including any case or case under chapter 7 of the Bankruptcy Code, the "<u>Successor Case</u>") for all DIP Loan Obligations, having priority over any and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1113, and 1114 and any other provision of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed DIP Superpriority Claims shall be payable from and have recourse to, solely for this Interim Order, the DIP Collateral.  The DIP Superpriority Claim granted in this paragraph shall be subject and subordinate in priority of payment only to payment of the Carve-Out.  Except as set forth herein, no other superpriority claims shall be granted or allowed in this Chapter 11 Case or in any Successor Case.

9.    <u>Survival of DIP Liens, DIP Superpriority Claim, Replacement Liens and Adequate Protection Claims</u>.  The DIP Liens, DIP Superpriority Claim, Replacement Liens (as

defined below), and Adequate Protection Claim (as defined below), and other rights and remedies granted under this Interim Order to the Secured Parties, shall continue in this and any Successor Case and shall be valid and enforceable against any trustee appointed in the Debtor's Chapter 11 Case and/or upon the dismissal of the Debtor's Chapter 11 Case or any Successor Case and such liens and security interests shall maintain their first priority as provided in this Interim Order until all the DIP Loan Obligations have been indefeasibly paid in full in cash and the Secured Parties' commitments have been terminated in accordance with the DIP Loan Documents.

## ADEQUATE PROTECTION

10.    <u>Adequate Protection for Prepetition Lenders</u>.  As adequate protection for the diminution, if any, in the value of the Prepetition Collateral Agent's and the Prepetition Lenders' respective interests in the Prepetition Collateral, resulting from, among other things, (a) the incurrence of the priming DIP Loan Obligations, (b) the use of Cash Collateral, (c) the granting of the DIP Liens and the DIP Superpriority Claim, (d) the subordination of the Prepetition Obligations to the Carve-Out, and (e) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (collectively, the "<u>Diminution</u>"), TriplePoint for itself and as the Prepetition Collateral Agent (for the ratable benefit of the Prepetition Lenders) is hereby granted the following ((a) through (c) below shall be referred to collectively as the "<u>Prepetition Adequate Protection Rights</u>"):

(a)    <u>Replacement Liens</u>.  To secure the Adequate Protection Claim (defined below), TriplePoint for itself and as the Prepetition Collateral Agent (for the ratable benefit of the Prepetition Lenders) is hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of execution by the Debtor of mortgages, security

agreements, pledge agreements, financing statements, and other agreements or instruments) valid, perfected, postpetition security interests in and liens (the "Replacement Liens") in all of the DIP Collateral, *provided, however*, that (i) solely for the purposes of this Interim Order, the Replacement Liens shall not attach to any proceeds from Avoidance Actions and (ii) notwithstanding anything to the contrary, the Replacement Liens shall only be and remain subject and subordinate to (A) the DIP Liens and/or payment of any DIP Loan Obligations on account thereof, (B) the Permitted Liens, and (C) the Carve-Out.

(b)    Adequate Protection Superpriority Claim.  As further adequate protection, TriplePoint for itself and as the Prepetition Collateral Agent (for the ratable benefit of the Prepetition Lenders) is hereby granted a superpriority claim, for the Diminution, which claim shall have priority over all administrative expense claims and unsecured claims against the Debtor or its estate, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 552(b), 726, 1113 and 1114 and any other provision of the Bankruptcy Code (the "Adequate Protection Claim"), *provided, however,* that, solely for the purposes of this Interim Order, the Adequate Protection Claim shall only attach to the DIP Collateral.  The Adequate Protection Claim will be deemed to constitute Prepetition Collateral under the Prepetition Loan Documents for all purposes, including, without limitation, such that any proceeds or consideration derived from the Adequate Protection Claim shall be deemed to constitute proceeds of such "Collateral" as defined in the Prepetition Loan Documents.  The Adequate Protection Claim shall be subordinate only to (i) the DIP Superpriority Claim and/or payment of any DIP Loan Obligations on account thereof, and (ii) the Carve-Out.

(c)  Further Adequate Protection.  Nothing in this Interim Order shall, or shall be deemed to, limit, abridge or otherwise affect the rights of the Prepetition Collateral Agent or the Prepetition Lenders to request at any time that the Court provide additional or further protection of their interests in the Prepetition Collateral (including the Cash Collateral), or to seek further or additional adequate protection in the event the adequate protection provided herein proves to be inadequate.

11.  Reserved

12.  Reserved

## CARVE-OUT; RESTRICTIONS ON USE OF FUNDS

13.  Carve-Out.

(a)  The Debtor's estate, the DIP Liens, the DIP Superpriority Claim, the Replacement Liens, and the Adequate Protection Claim and the Prepetition Liens shall be subject, in accordance with the priority set forth herein and subordinate only to, and proceeds thereof may be used to pay: (i) fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) or to the Clerk of the Bankruptcy Court (the "Case Administration Fees"), (ii) unpaid professional fees and expenses ("Professional Fees") payable to each professional retained by the Debtor (the "Debtor Professionals") and Creditors' Committee (collectively with the Debtor Professionals, the "Estate Professionals") that are incurred or accrued prior to the date of the occurrence of a Termination Event (as defined below), but subject to the aggregate amount not in excess of the amounts set forth for each such professional in the Approved Budget through the week such Termination Event occurs, and ultimately allowed by the Court pursuant to sections 328, 330, 331 and 503 of the Bankruptcy Code or any order of the Court (whenever such fees may be actually incurred prior to the Termination Date), (iv)

Case Administration Fees and Professional Fees incurred on or after the date of the occurrence

of a Termination Event (as defined below) in an aggregate amount not to exceed $25,000,

(collectively, the "Carve-Out"), *provided, however*, that the DIP Lenders shall not be obligated

to fund any amounts in excess of the Maximum Commitment.  So long as a Termination Event

(as defined below) has not occurred, the Debtor shall be authorized to make draws under the

DIP Facility in accordance with the Approved Budget to fund the amount set forth in the "Fees

Paid" section of the Approved Budget for payment of Case Administration and Professional

Fees to a trust account held by Debtor's counsel (the "Trust Account"), and such funding shall

permanently reduce the Carve-Out on a dollar-for-dollar basis; and further the Debtor shall be

permitted to pay Case Administration Fees and Professional Fees allowed and payable under

Bankruptcy Code sections 328, 330, 331 and 503, in an aggregate amount not in excess of the

amounts set forth for each such professional in the Approved Budget.  In addition, after the

occurrence of a Termination Event (as defined below), the DIP Lenders shall fund (to the

extent not yet funded) the payment of allowed Professional Fees and disbursements incurred

by each Estate Professional (net of any retainer held by each such Professional) in an

aggregate amount not in excess of the amounts set forth for each such professional in the

Approved Budget through the week such Termination Event occurs, and such funding shall

permanently reduce the Carve-Out on a dollar-for-dollar basis.  The DIP Lenders' and the

Prepetition Lenders' obligations to permit the use of their Cash Collateral to fund or to

otherwise pay the Carve-Out expenses may be reserved against borrowing availability under

the DIP Loan Documents and shall be added to and made part of the DIP Loan Obligations

and secured by the DIP Collateral and otherwise entitled to the protections granted under this

Interim Order, the DIP Loan Documents, the Bankruptcy Code and applicable law, as

applicable.

(b)   Nothing contained in this Interim Order shall be construed as consent to

the allowance of any fees and expenses referred to above, and shall not affect any right of the

Secured Parties to object to the reasonableness of such amounts.

14.   Restrictions on Use of Funds.

(a)   Notwithstanding anything to the contrary, no proceeds of the Postpetition

Financing Arrangement, any DIP Collateral or Prepetition Collateral (including, without

limitation, Cash Collateral) or any portion of the Carve-Out, may be used to pay any claims for

services rendered by any of the professionals retained by the Debtor, any creditor or party in

interest, any committee, any trustee appointed under this Chapter 11 Case or any Successor

Case, or any other party to (i) request authorization to obtain postpetition loans or other

financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code, or

otherwise, other than from the DIP Lenders in accordance with the DIP Loan Documents; or

(ii) investigate (except as set forth in paragraph 15 below), assert, join, commence, support or

prosecute any action or claim, counter-claim, action, proceeding, application, motion,

objection, defense, or other contested matter seeking any order, judgment, determination or

similar relief against, or adverse to the interests of, in any capacity, the Secured Parties, or any

of their respective officers, directors, employees, agents, attorneys, affiliates, assigns, or

successors, with respect to any transaction, occurrence, omission, or action, including, without

limitation, (A) any Avoidance Actions or other actions arising under chapter 5 of the

Bankruptcy Code; (B) any action relating to any act, omission or aspect of the relationship

between any of the Secured Parties, on the one hand, and the Debtor or any of its affiliates, on

the other; (C) any action with respect to the validity and extent of the DIP Loan Obligations or the Prepetition Obligations, or the validity, extent, and priority of the DIP Liens, the Prepetition Liens or the Replacement Liens; (D) any action seeking to invalidate, set aside, avoid or subordinate, in whole or in part, the DIP Liens, the Prepetition Liens or the Replacement Liens; and/or (E) except to contest the occurrence or continuance of any Termination Event (as defined below) as permitted in paragraph 15, any action that has the effect of preventing, hindering or delaying (whether directly or indirectly) the Secured Parties in respect of their liens and security interests in the Collateral, Cash Collateral or the Prepetition Collateral; (F) pay any fees or similar amounts to any person or entity who has proposed or may propose to purchase interests in the Debtor without the prior written consent of the DIP Lenders and the Prepetition Lenders; or (G) use or seek to use Cash Collateral or sell or otherwise dispose of DIP Collateral, unless otherwise permitted hereby, without the consent of the DIP Lenders and the Prepetition Lenders.

(b)    Up to $10,000 in the aggregate of the Carve-Out, any DIP Collateral, any Prepetition Collateral, any Cash Collateral or proceeds of the DIP Facility may be used by the Creditors' Committee (to the extent such committee is appointed) to investigate (but not prosecute) the extent, validity, and priority of the Prepetition Obligations, the Prepetition Liens, or any other claims against the Prepetition Lenders so long as such investigation occurs within the Challenge Period (as defined below).

15.    <u>Reservation of Certain Third Party Rights and Bar of Challenges and Claims</u>.

(a)    The Debtor's acknowledgements and stipulations set forth in Paragraph D (the "<u>Debtor' Stipulations</u>") above shall be binding upon the Debtor in all circumstances upon entry of this Interim Order.  The Debtor's Stipulations shall be binding upon each other party

in interest, including the Creditors' Committee, if any, unless such Creditors' Committee or any other party in interest (including any chapter 11 trustee in the Chapter 11 Case or any chapter 7 trustee in any Successor Case) other than the Debtor, first, commences, by the earlier of (x) with respect to any Creditors' Committee, sixty (60) calendar days from the formation of any Creditors' Committee, and (y) solely if no Creditors' Committee is formed, with respect to other parties in interest with requisite standing other than the Debtor or any Creditors' Committee, seventy-five (75) calendar days following the date of entry of the Interim Order (such time period established by the earlier of clauses (x) and (y), shall be referred to as the "Challenge Period," and the date that is the next calendar day after the termination of the Challenge Period in the event that either (i) no Challenge (as defined below) is properly raised during the Challenge Period or (ii) with respect only to those parties who properly file a Challenge (as defined below), such Challenge is fully and finally adjudicated, shall be referred to as the "Challenge Period Termination Date"), (A) a contested matter, adversary proceeding, or other action or "claim" (as defined in the Bankruptcy Code) challenging or otherwise objecting to the admissions, stipulations, findings, or releases included in the Debtor's Stipulations, or (B) a contested matter, adversary proceeding, or other action against any or all of the Secured Parties (in any capacity) in connection with or related to (I) the Prepetition Obligations, (II) the prepetition business relationship between or conduct of the Secured Parties with the Debtor, (III) the actions or inactions of any of the Secured Parties arising out of or related to the Prepetition Obligations or otherwise, including, without limitation, any claim against the any of the Secured Parties in the nature of an "equitable subordination," "lender liability" "deepening insolvency" or "control person" liability, (IV) any setoff, counterclaim, or defense to the Prepetition Obligations (including, but not limited to, those

under sections 506, 544, 547, 548, 549, 550, and/or 552 of the Bankruptcy Code) or (V) any

avoidance of or challenge (whether pursuant to Chapter 5 of the Bankruptcy Code or

otherwise) to any transfer made by or on behalf of the Debtor to or for the benefit of a Secured

Party (but excluding, solely for the purpose of this Interim Order, those under section 506(c))

((A) and (B) collectively, the "Challenges" and, each individually, a "Challenge"), and second,

obtains a final, non-appealable order in favor of such party in interest sustaining any such

Challenge in any such timely-filed contested matter, adversary proceeding, or other action.

For the avoidance of doubt, any trustee appointed or elected in this case shall, until the

expiration of the period provided herein for asserting challenges, and thereafter (to the extent

that a challenge is timely filed) for the duration of any adversary proceeding or contested

matter commenced pursuant to this paragraph (whether commenced by such trustee or

commenced by any other party in interest on behalf of the Debtor's estate), be deemed to be a

party other than the Debtor and shall not, for purposes of such adversary proceeding or

contested matter, be bound by the acknowledgments, admissions, confirmations and

stipulations of the Debtor in this Interim Order.

      (b)   Upon the Challenge Period Termination Date and for all purposes in this

Chapter 11 Case and any Successor Case, (i) all payments made to or for the benefit of the

Secured Parties pursuant to, or otherwise authorized by, this Interim Order or otherwise

(whether made prior to, on, or after the Petition Date) shall be indefeasible and not be subject

to counterclaim, set-off, subordination, recharacterization, defense, or avoidance, (ii) any and

all such Challenges by any party in interest shall be deemed to be forever released, waived,

and barred, (iii) the Prepetition Obligations shall be deemed to be a fully allowed secured

claim within the meaning of section 506 of the Bankruptcy Code (which claim and liens shall

have been deemed satisfied in full by the repayment of the Prepetition Obligations), (iv) the

Prepetition Obligations shall be deemed to be a fully allowed claim, and (v) the Debtor's

stipulations in paragraph D and the releases in paragraph 17 shall be binding on all parties in

interest, including any Creditors' Committee or any trustee appointed in this Chapter 11 Case

or any Successor Case.

16.    <u>Prohibition on Granting of Additional Liens and Interests</u>.  No liens, claims,

interests or priority status, other than the Carve-Out and the Permitted Liens, having a lien or

administrative priority superior to or *pari passu* with that of the DIP Liens, the Adequate

Protection Claim, or the Replacement Liens granted by this Interim Order, shall be granted while

any portion of the DIP Loan Obligations or Prepetition Obligations remain outstanding, or any

commitment under the DIP Loan Documents or Prepetition Loan Documents remains in effect,

without the prior written consent of the DIP Lenders and the Prepetition Lenders.

17.    <u>Release</u>.  The release, discharge, waivers, settlements, compromises, and

agreements set forth in this paragraph 17 shall be deemed effective upon entry of this Interim

Order and subject only to the rights set forth in paragraph 15 above.  The Debtor forever and

irrevocably (i) releases, discharges, and acquits TriplePoint Capital LLC, Khosla Ventures IV,

LP and Khosla Ventures IV (CF), LP, each in their capacity as a Prepetition Lender, and each of

their respective former or current officers, employees, directors, agents, representatives, owners,

members, partners, financial advisors, legal advisors, managers, consultants, accountants,

attorneys, and predecessors in interest (collectively, the "<u>Prepetition Releasees</u>") from (a) any

and all claims regarding the validity, priority, perfection or avoidability of the liens or secured

claims of the Prepetition Releasees and (b) all causes of action against the Prepetition Releasees,

with respect to the Prepetition Obligations, the Prepetition Liens, or the Prepetition Collateral;

and (ii) waives any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability and non-avoidability of the Prepetition Obligations and the Prepetition Liens.

## TERMINATION; REMEDIES; MODIFICATION OF AUTOMATIC STAY

18.    Termination.  Upon the occurrence an Event of Default (as defined in the DIP Loan Documents), the Maturity Date (as defined in the DIP Loan Documents), or default by the Debtor of any of its obligations under this Order unless waived in writing by all of the DIP Lenders and the Prepetition Lenders, each in its sole discretion (the "Termination Event") (i) the Debtor's authorization to use Cash Collateral shall immediately and automatically terminate, (ii) the DIP Loan Obligations shall be immediately due and payable; and (iii) free of the restrictions of Bankruptcy Code Section 362 or any other section of the Bankruptcy Code, the DIP Lenders and the Prepetition Lenders may take immediate reasonable action to protect the Collateral from harm, theft and/or dissipation.

19.    Remedies and Stay Modification.

(a)    Subject to paragraph 19(c) below, the automatic stay provisions of Section 362 of the Bankruptcy Code are vacated and modified without the need for further Court order to permit the Secured Parties, as applicable, upon the occurrence of a Termination Event, and without any interference from the Debtor or any other interested party but subject to three (3) business days' prior written notice (which may be delivered by electronic mail) (the "Remedies Notice Period") to the Debtor, its counsel, counsel to any Creditors' Committee and counsel to the U.S. Trustee, to exercise all rights and remedies provided for in the DIP Loan Documents, this Interim Order, the Prepetition Loan Documents or under other applicable bankruptcy and non-bankruptcy law including, without limitation, the right to terminate the commitments under the DIP Loan Documents, (i) cease making DIP Loans

and/or suspend or terminate the commitments under the DIP Loan Documents; (ii) declare all DIP Obligations immediately due and payable; (iii) in the case of the DIP Lenders and the Prepetition Lenders, take any actions reasonably calculated to preserve or safeguard the DIP Collateral and/or the Prepetition Collateral or to prepare the DIP Collateral and/or the Prepetition Collateral for sale; (iv) in the case of the DIP Lenders or the Prepetition Lenders, foreclose or otherwise enforce the DIP Liens, the Prepetition Liens and the Replacement Liens on any or all of the DIP Collateral and/or the Prepetition Collateral; and (v) exercise any other default-related rights and remedies under the DIP Loan Documents, the Prepetition Loan Documents, or this Interim Order.

(b)    Immediately upon the occurrence of a Termination Event or a default by the Debtor of any of its obligations under this Interim Order, the DIP Lenders may charge interest at the default rate set forth in the DIP Loan Documents without being subject to the Remedies Notice Period.

(c)    The automatic stay of Section 362(a) of the Bankruptcy Code, to the extent applicable, shall be deemed terminated without the necessity of any further action by the Court in the event that the Debtor, the Creditors' Committee, if any, and/or the U.S. Trustee have not obtained an order from this Court to the contrary prior to the expiration of the Remedies Notice Period.  The Debtor, the Creditors' Committee, if any, and/or the U.S. Trustee shall have the burden of proof at any hearing on any request by them to reimpose or continue the automatic stay of Section 362(a) of the Bankruptcy Code or to obtain any other injunctive relief.

(d)    If either of the DIP Lenders or the Prepetition Lenders are entitled, and has elected in accordance with the provisions hereof, to enforce its respective liens or security

interests or exercise any other default-related remedies following expiration of the Remedies

Notice Period, the Debtor (or any trustee appointed under chapter 11 or chapter 7) shall

cooperate with the Secured Parties (as applicable) in connection with such enforcement by,

among other things, (i) providing at all reasonable times access to the Debtor's premises to

representatives or agents of the Secured Parties (including any collateral liquidator or

consultant), (ii) providing the Secured Parties and their representatives or agents, at all

reasonable times, access to the Debtor's books and records and any information or documents

requested by the Secured Parties or their respective representatives, (iii) performing all other

obligations set forth in the DIP Loan Documents, and (iv) taking reasonable steps to safeguard

and protect the DIP Collateral, and the Debtor shall not otherwise interfere with or actively

encourage others to interfere with the Secured Parties' enforcement of rights.

      (e)    Upon the occurrence and during the continuance of a Termination Event

and the expiration of any Remedies Notice Period, the DIP Lenders shall have no further

obligation to provide financing under the DIP Loan Documents and the Secured Parties shall

have no obligation to permit the continued use of Cash Collateral.

### MISCELLANEOUS

      20.    <u>Limitation on Section 506(c) Claims</u>.  Upon entry of the Final Order, no costs or

expenses of administration which have been or may be incurred in this Chapter 11 Case or any

Successor Case at any time shall be surcharged against, and no person or entity may seek to

surcharge any costs or expenses of administration against the Secured Parties or any of their

respective claims, the Carve-Out, the DIP Collateral or the Collateral, pursuant to sections 105 or

506(c) of the Bankruptcy Code or otherwise, without the prior written consent, as applicable, of

the Secured Parties.  No action, inaction or acquiescence by the Secured Parties shall be deemed

to be or shall be considered evidence of any alleged consent to a surcharge against the Secured

Parties, any of their respective claims, the Carve-Out, the DIP Collateral or the Collateral.

21.    <u>No Marshaling</u>.  The Secured Parties shall not be subject to the equitable doctrine

of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the

Prepetition Collateral.  Without limiting the generality of the immediately preceding sentence, no

party shall be entitled, directly or indirectly, to direct the exercise of remedies or seek (whether

by order of this Court or otherwise) to marshal or otherwise control the disposition of the DIP

Collateral after a Termination Event.

22.    <u>Equities of the Case Waiver</u>.  The Secured Parties shall each be entitled to all of

the rights and benefits of section 552(b) of the Bankruptcy Code.  No person or entity may assert

an "equities of the case" claim under section 552(b) of the Bankruptcy Code against the any of

the Secured Parties with respect to proceeds, product, offspring or profits of any of the DIP

Collateral or the Prepetition Collateral.

23.    <u>Additional Perfection Measures</u>.  The DIP Liens and the Replacement Liens shall

be perfected by operation of law immediately upon entry of this Interim Order.  Neither the

Debtor nor the Secured Parties shall be required to enter into or obtain landlord waivers,

mortgagee waivers, bailee waivers, warehouseman waivers or other waiver or consent, or to file

or record financing statements, mortgages, deeds of trust, leasehold mortgages, notices of lien or

similar instruments in any jurisdiction (including, trademark, copyright, trade name or patent

assignment filings with the United States Patent and Trademark Office, Copyright Office or any

similar agency with respect to intellectual property, or filings with any other federal

agencies/authorities), or obtain consents from any licensor or similarly situated party-in-interest,

or take any other action in order to validate and to perfect the DIP Liens or the Replacement
Liens.

24.    <u>Application of Collateral Proceeds</u>.  Proceeds of the DIP Collateral received by
the Debtor or its estate shall be applied, after reserving any amounts in the Approved Budget that
have not yet been incurred (whether prior to or after a Sale ("<u>Excess Sale Proceeds</u>"), to prepay
(1) first, the DIP Loan Obligations excluding the portion of the DIP Loan Obligations related to
the Roll-Up (as defined in the DIP Term Sheet, which Roll-Up is subject to entry of the Final
Order); and (2) next, the portion of the DIP Loans related to the Roll-Up (each, a "<u>Mandatory
Prepayment Event</u>"):

(i)    100% of the Excess Sale Proceeds simultaneous with the
consummation thereof; and

(ii)    100% of the net proceeds of any other sale, certain extraordinary
receipts (including tax refunds, indemnity payments, pension reversions, acquisition
purchase price adjustments and insurance proceeds not included as proceeds of asset
dispositions in the Approved Budget) realized by the Debtor.

In the event of either a Mandatory Prepayment Event, or a Termination Event and the expiration
of the Remedies Notice Period, the Debtor is hereby authorized and directed to remit to the DIP
Lenders, in accordance with the direction of the DIP Lenders, one-hundred percent (100%) of all
collections on, and proceeds of, the DIP Collateral (after funding the Carve-Out through the
occurrence of the Termination Event (less amounts previously paid)), and the automatic stay
provisions of section 362 of the Bankruptcy Code are hereby modified to permit the DIP Lenders
to retain and apply all collections, remittances, and proceeds of the DIP Collateral in accordance
with the DIP Loan Documents.

25.    <u>Cash Management Systems</u>.  Subject to the Debtor's cash management order entered by the Court, the Debtor is authorized and directed to maintain its cash management system in a manner consistent with the DIP Loan Documents, this Interim Order; <u>provided, however</u>, that such order is and remains at all times on terms and conditions acceptable to each of the Secured Parties and such order is not inconsistent with the terms specified herein or the DIP Loan Documents.

26.    <u>Delivery of Documentation.</u>  The Debtor (and/or its legal or financial advisors) shall deliver to the DIP Lenders, counsel to the DIP Lenders, the Prepetition Lenders and counsel to TriplePoint and KV, all financial reports, budgets, forecasts, and all other legal or financial documentation, pleadings, and/or filings that are either (i) required to be provided (by the Debtor and/or its legal or financial advisors) to the DIP Lenders or the Prepetition Lenders or such parties' legal and financial advisors pursuant to the DIP Loan Documents, or (ii) reasonably requested by the DIP Lenders or the Prepetition Lenders (or their respective legal and financial advisors).

27.    <u>Access to Books and Records</u>.  The Debtor (and/or its legal and financial advisors) will (a) keep proper books, records and accounts in accordance with GAAP in which full, true and correct entries shall be made of all dealings and transactions in relation to its business and activities, (b) cooperate, consult with, and provide to the DIP Lenders or the Prepetition Lenders all such information as required or allowed under the DIP Loan Documents, the provisions of this Interim Order or that is afforded to the Creditors' Committee and/or the Creditors' Committee's respective legal or financial advisors, (c) permit, upon one (1) business day's notice, representatives of the DIP Lenders or the Prepetition Lenders to visit and inspect any of its properties, to examine and make abstracts or copies from any of its books and records,

to conduct a collateral audit and analysis of its inventory and accounts, to tour the Debtor's

business premises and other properties, and to discuss, and provide advice with respect to, its

affairs, finances, properties, business operations and accounts with its officers, employees and

independent public accountants as often as may reasonably be desired, and (d) permit

representatives of the DIP Lenders or the Prepetition Lenders to consult with and advise the

Debtor's management on matters concerning the general status of the Debtor's business,

financial condition and operations.

28.    Lenders Not Responsible Persons.  Subject to entry of the Final Order, in

(a) making the decision to make the DIP Loans or consenting to the use of Cash Collateral;

(b) administering the DIP Loans; (c) extending other financial accommodations to the Debtor

under the DIP Loan Documents and this Interim Order; (d) making the decision to make the

loans and financial accommodations under the Prepetition Loan Documents; (e) administering

the loans and financial accommodations extended under the Prepetition Loan Documents;

(f) extending other financial accommodations to the Debtor under the Prepetition Loan

Documents; and (g) making the decision to collect the indebtedness and obligations of the

Debtor, none of the Secured Parties shall be considered to be exercising control over any

operations of the Debtor or acting in any way as a responsible person, or as an owner or operator

under any applicable law, including without limitation, any environmental law (including but not

limited to the Comprehensive Environmental Response, Compensation and Liability Act, 42

U.S.C. 9601, *et seq.*, the Resource Conservation and Recovery Act, 42 U.S.C. 6901, *et seq.*, as

either may be amended from time to time, or any similar federal or state statute).

29.    Successors and Assigns.  The DIP Loan Documents and the provisions of this

Interim Order shall be binding upon the Debtor, the Secured Parties and each of their respective

successors and assigns, and shall inure to the benefit of the Debtor, the Secured Parties, and each of their respective successors and assigns including, without limitation, any trustee, examiner with expanded powers, responsible officer, estate administrator or representative, or similar person appointed in a case for the Debtor under any chapter of the Bankruptcy Code. The terms and provisions of this Interim Order shall also be binding on all of the Debtor's creditors, equity holders, and all other parties in interest, including, but not limited to a trustee appointed under chapter 7 or chapter 11 of the Bankruptcy Code.

30. <u>Binding Nature of Agreement</u>. The DIP Loan Documents to which the Debtor is a party shall constitute legal, valid, and binding joint and several obligations of the Debtor, enforceable in accordance with their terms. The DIP Loan Documents have been or will be properly executed and delivered to the DIP Lenders by the Debtor. Unless otherwise consented to in writing, the rights, remedies, powers, privileges, liens, and priorities of the Secured Parties provided for in this Interim Order, the DIP Loan Documents, or otherwise shall not be modified, altered or impaired in any manner by any subsequent order (including a confirmation or sale order), by any plan of reorganization or liquidation in this Chapter 11 Case, by the dismissal or conversion of this Chapter 11 Case or in any subsequent case under the Bankruptcy Code unless and until the DIP Loan Obligations have first been indefeasibly paid in full in cash and completely satisfied and the commitments terminated in accordance with the DIP Loan Documents.

31. <u>Subsequent Reversal or Modification</u>. This Interim Order is entered pursuant to section 364 of the Bankruptcy Code, and Bankruptcy Rules 4001(b) and (c), granting the DIP Lenders all protections and benefits afforded by section 364(e) of the Bankruptcy Code. Any financial accommodations made to the Debtor by the Secured Parties pursuant to this Interim

Order and the DIP Loan Documents shall be deemed to have been made by the Secured Parties in good faith, as such term is used in section 364(e) of the Bankruptcy Code. If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, that action will not affect (i) the validity of any obligation, indebtedness or liability incurred hereunder by the Debtor to the Secured Parties, prior to the date of receipt by the DIP Lenders and the Prepetition Lenders of written notice of the effective date of such action or (ii) the validity and enforceability of any lien or priority authorized or created under this Interim Order or pursuant to the DIP Loan Documents or the Prepetition Loan Documents. Notwithstanding any such reversal, stay, modification or vacatur, any postpetition indebtedness, obligation or liability incurred by the Debtor to the Secured Parties prior to written notice to the DIP Lenders and the Prepetition Lenders of the effective date of such action, shall be governed in all respects by the original provisions of this Interim Order, and the Secured Parties shall be entitled to all the rights, remedies, privileges, and benefits granted herein and in the DIP Loan Documents with respect to all such indebtedness, obligations or liability.

32.    Collateral Rights. If any party who holds a lien or security interest in DIP Collateral or Prepetition Collateral that is junior and/or subordinate to the DIP Liens, the Replacement Liens or the Prepetition Liens in such DIP Collateral or Prepetition Collateral receives or is paid the proceeds of such DIP Collateral or Prepetition Collateral, or receives any other payment with respect thereto from any other source, prior to the indefeasible payment in full in cash and the complete satisfaction of (a) all DIP Loan Obligations under the DIP Loan Documents and termination of the commitment in accordance with the DIP Loan Documents, and (b) the Prepetition Obligations under the Prepetition Loan Documents, such junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such

DIP Collateral or Prepetition Collateral in trust for the DIP Lenders and the Prepetition Lenders and shall immediately turn over such proceeds to the DIP Lenders and the Prepetition Lenders for application to repay the DIP Loan Obligations and the Prepetition Obligations in accordance with the direction of the DIP Lenders and the Prepetition Lenders.

33.   Injunction.  Except as provided in the DIP Loan Documents, and this Interim Order, the Debtor shall be enjoined and prohibited from, at any time during this Chapter 11 Case, granting liens on the DIP Collateral, the Prepetition Collateral or any portion thereof to any other parties, pursuant to section 364(d) of the Bankruptcy Code or otherwise, which liens are senior to or *pari passu* with the liens granted to the DIP Lenders, and TriplePoint, for itself and as the Prepetition Collateral Agent for the ratable benefit of the Prepetition Lenders, except in accordance with the DIP Loan Documents, the Prepetition Loan Documents and this Interim Order.

34.   No Waiver.  This Interim Order shall not be construed in any way as a waiver or relinquishment of any rights that the Secured Parties may have to bring or be heard on any matter brought before this Court.

35.   Limits on Lenders' Liability.  Nothing in this Interim Order or in any of the DIP Loan Documents or any other documents related to this transaction shall in any way be construed or interpreted to impose or allow the imposition upon the Secured Parties of any liability for any claims arising from any and all activities by the Debtor or any of its subsidiaries or affiliates in the operation of its businesses or in connection with its restructuring efforts.

36.   Priority of Terms.  To the extent of any conflict between or among (a) the express terms or provisions of any of the DIP Loan Documents, the Motion, any other order of this Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Interim

Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" "as set forth in" or "as more fully described in" the DIP Loan Documents (or words of similar import), the terms and provisions of this Interim Order shall govern.

37.     No Third Party Beneficiary.  Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

38.     Survival.  Except as otherwise provided herein, (a) the protections afforded under this Interim Order, and any actions taken pursuant thereto, shall survive the entry of an order (i) dismissing this Chapter 11 Case or (ii) converting this Chapter 11 Case into a case pursuant to chapter 7 of the Bankruptcy Code, and (b) the DIP Liens, the Replacement Liens, the DIP Superpriority Claim and the Adequate Protection Claim shall continue in this Chapter 11 Case, in any such Successor Case, or after any such dismissal.  Except as otherwise provided herein, the DIP Liens, the Replacement Liens, the DIP Superpriority Claim and the Adequate Protection Claim shall maintain their priorities as provided in this Interim Order, the Final Order, and the DIP Loan Documents, and shall not be modified, altered or impaired in any way by any other financing, extension of credit, incurrence of indebtedness (except with respect to any additional financing to be provided by the DIP Lenders in accordance with the Final Order), or any conversion of this Chapter 11 Case into a case pursuant to chapter 7 of the Bankruptcy Code or dismissal of this Chapter 11 Case, or by any other act or omission until (i) all DIP Loan Obligations are indefeasibly paid in full in cash and completely satisfied, and the commitments under the DIP Loan Documents are terminated in accordance therewith, and (ii) the Prepetition Obligations have been or are deemed to have been satisfied in accordance with the Bankruptcy Code.

39.    _Landlords_. Notwithstanding anything to the contrary herein, nothing in this Interim Order shall affect, impair or otherwise prejudice any rights that the Debtor's landlords may have or have the effect of encumbering, pledging or collateralizing the leasehold interests of the Debtor with respect to premises owned by such landlord to the extent otherwise prohibited under the terms of the applicable lease with such landlord.

40.    _Adequate Notice/Scheduling of Final Hearing_. The notice given by the Debtor of the Interim Hearing was given in accordance with Bankruptcy Rules 2002 and 4001(c) and the local rules of this Court and, under the circumstances, was adequate and sufficient. No further notice of the request for the relief granted at the Interim Hearing is required. The Debtor shall mail copies of this Interim Order and notice of the Final Hearing to: (i) the Office of the United States Trustee; (ii) the Office of the United States Attorney for the District of Delaware; (iii) the Internal Revenue Service; (iv) the Debtor's twenty largest unsecured creditors; (v) counsel to TriplePoint and KV; (vi) all other known parties asserting a lien against the Debtor's assets and (vii) any other party requesting notice after the entry of this Interim Order. Any objection to the relief sought at the Final Hearing shall be made in writing setting forth with particularity the grounds thereof, and filed with the Court and served so as to be _actually received_ no later than seven (7) days prior to the Final Hearing at 4:00 p.m. (Eastern) by the following: (a) counsel to the Debtor: (i) Cooley LLP, 101 California Street, 5th Floor, San Francisco, CA 94111-5800 (attn: Keith A. McDaniels) (kmcdaniels@cooley.com), and (ii) Cole, Schotz, Meisel, Forman & Leonard, P.A., 500 Delaware Avenue, Suite 1410, Wilmington, DE 19801 (attn: Patrick J. Reilley) (preilley@coleschotz.com); (b) counsel to KV: Pachulski Stang Ziehl & Jones LLP, 150 California Street, 15th Floor, San Francisco, CA 94111 (attn: Debra I. Grassgreen and Maxim B. Litvak) (dgrassgreen@pszjlaw.com; mlitvak@pszjlaw.com) and 919 North Market Street, 17th

Floor, Wilmington, DE 19801 (attn.: Peter J. Keane; pkeane@pszjlaw.com); (c) counsel to

TriplePoint: (i) McDermott Will & Emery, 2049 Century Park East, 38th Floor Los Angeles, CA

90067-3218 (attn: Gary B. Rosenbaum) (grosenbaum@mwe.com), and (ii) Elliott Greenleaf,

1105 Market Street, Suite 1700, Wilmington, DE 19801 (attn.: Eric M. Sutty)

(EMS@elliottgreenleaf.com); and (d) the Office of the United States Trustee: 844 King Street,

Suite 2207, Wilmington, Delaware 19801 (attn: Jane Leamy (Jane.M.Leamy@usdoj.gov). The

Court shall conduct a Final Hearing on the Motion commencing on October 23, 2013 at 9:30 a.m.

(Eastern).

41.    <u>Immediate Binding Effect; Entry of Interim Order</u>.  This Interim Order shall not

be stayed and shall be valid and fully effective immediately upon entry, notwithstanding the

possible application of Bankruptcy Rules 6004(h), 7062, and 9014, or otherwise, and the Clerk

of the Court is hereby directed to enter this Interim Order on the Court's docket in this Chapter

11 Case.

42.    <u>Proofs of Claim</u>.  Neither the Prepetition Collateral Agent nor any of the

Prepetition Lenders shall be required to file proofs of claim in the Chapter 11 Case or Successor

Case for any claim allowed herein.  The Debtor's Stipulations shall be deemed to constitute a

timely filed proof of claim for the Prepetition Collateral Agent and the Prepetition Lenders upon

approval of this Interim Order, and the Prepetition Collateral Agent and the Prepetition Lenders

shall be treated under section 502(a) of the Bankruptcy Code as if they each have filed a proof of

claim.  Notwithstanding any order entered by the Court in relation to the establishment of a bar

date in this Chapter 11 Case or Successor Case to the contrary, the Prepetition Collateral Agent

and each of the Prepetition Lenders are hereby authorized and entitled, each in its sole discretion,

but not required, to file (and amend and/or supplement, as they see fit) a proof of claim and/or

aggregate proofs of claim in this Chapter 11 Case or Successor Case for any claim allowed herein.

43.     <u>Retention of Jurisdiction</u>.  This Court shall retain exclusive jurisdiction over all matters pertaining to the implementation, interpretation, and enforcement of this Interim Order.

Dated:  Wilmington, Delaware
       October 4, 2013

                         HONORABLE BRENDAN L. SHANNON
                         UNITED STATES BANKRUPTCY JUDGE