**Exhibit C**

**(Bidding Procedures Order)**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Nirvanix, Inc.,[1] | Case No. 13-12595 (BLS) |
| Debtor. | Re: ____ |

**ORDER (A) APPROVING PROCEDURES IN CONNECTION WITH THE SALE(S) OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS; (B) SCHEDULING RELATED AUCTION(S) AND HEARING TO CONSIDER APPROVAL OF SALE; (C) APPROVING PROCEDURES RELATED TO THE ASSUMPTION AND ASSIGNMENT OF CERTAIN OF DEBTOR'S EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) APPROVING THE FORM AND MANNER OF NOTICE THEREOF; AND (E) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion") [2] of the above-captioned debtor and debtor in possession (the "Debtor") for the entry of an order pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended from time to time, the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedures of the Bankruptcy Court for the District of Delaware (the "Local Rules") (i)(a) approving procedures in connection with the Sale(s) of substantially all of the Debtor's assets; (b) approving the Lot 1 Stalking Horse Protections; (c) scheduling the related Auction(s) and hearing to consider approval of the Sale(s); (d) approving procedures related to the assumption and assignment of certain of the Debtor's executory contracts and unexpired leases; (e) approving the form and manner of notice thereof; (f) authorizing the United States Trustee to appoint a consumer privacy ombudsman, and (g) granting related relief; and (ii)(a) authorizing

---

[1]   The last four digits of the Debtor's federal tax identification number are 6586.  The Debtor's address is 9191 Towne Centre Drive, Suite 510, San Diego, California 92122.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

the Sale(s) of such assets free and clear of liens, claims, encumbrances, and other interests, except as provided by a Purchase Agreement; (b) approving the assumption and assignment of certain of the Debtor's executory contracts and unexpired leases related thereto; and (c) granting related relief; the Court having reviewed the Motion and the Court having found that (i) the Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; (ii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b); (iv) notice of the Motion was sufficient under the circumstances; and after due deliberation the Court having determined that the relief requested in the Motion is in the best interests of the Debtor, its estate and its creditors; and good and sufficient cause having been shown;

AND FURTHER FOUND AND DETERMINED THAT:

A.      The Debtor's proposed notice of the Bidding Procedures, the Cure Procedures, the Auction(s) and the hearing to approve the Sale(s) of the Assets (the "Sale Hearing") is appropriate and reasonably calculated to provide all interested parties with timely and proper notice, and no other or further notice is required.

B.      The Bidding Procedures substantially in the form attached hereto as Exhibit 1 are fair, reasonable, and appropriate and are designed to maximize the recovery from the Sale(s) of the Assets.

C.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

D.     To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.   To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

IT IS HEREBY ORDERED THAT:

1.     The Motion is GRANTED.

2.     All objections to the relief requested in the Motion that have not been withdrawn, waived or settled are overruled except as reflected in the provisions of this Order.

3.     The Bidding Procedures attached hereto as Exhibit l are APPROVED.

4.     The United States Trustee shall appoint a consumer privacy ombudsman no later than 3 days before the Sale Hearing.

5.     The Lot 1 Stalking Horse Protections are APPROVED and shall be paid when and as set forth in the Lot 1 Stalking Horse Agreement without further order of the Court as administrative expense claims of the Debtor's estate pursuant to section 503(b) and 507(a)(1) of the Bankruptcy Code.

6.     **The Bid Deadline shall be November 12, 2012, at 5:00 p.m (prevailing Eastern Time).**

7.     The Debtor shall have the exclusive right to determine whether a bid is a Qualified Bid and shall notify Potential Bidders whether their bids have been recognized as such within one (1) Business Day of the Bid Deadline; *provided, however,* that the Lot 1 Stalking Horse Bidder is hereby deemed a Qualified Bidder, and the Lot 1 Stalking Horse Agreement submitted to the Debtor by the Lot 1 Stalking Horse Bidder and appended to the Motion as Exhibit B, is deemed a Qualified Bid, for all purposes in connection with the Bidding Process, the Auction for the Lot 1 Assets, and the Sale of the Lot 1 Assets.

2080516 v2/NY

8.      **The Auction(s), if necessary, shall be held at 10:00 a.m. (PST) on November 15, 2013**, at the offices of Cooley LLP, 101 California Street, 5th Floor, San Francisco, California 94111, or such other location as shall be timely communicated to all entities entitled to attend the Auction(s).

9.      At the Auction(s), each Qualified Bidder for the relevant Lot of Assets shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale and the Auction(s) shall be open to all creditors, conducted openly, and transcribed.

10.     The Debtor shall determine which offer is the highest and otherwise best offer for each Lot of the Assets, giving effect to (i) the Lot 1 Break-Up Fee and Expense Reimbursement payable to the Lot 1 Stalking Horse Bidder under the Lot 1 Stalking Horse Agreement, and (ii) the Lot 2 Break-Up Fee, if applicable, as well as any additional liabilities to be assumed by a Qualified Bidder and any additional costs which may be imposed on the Debtor.

11.     **The Sale(s) Hearing shall be held on November [___], 2013 at _____ (prevailing Eastern Time)** before this Court, the U.S. Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801, 6th Floor, Courtroom ____. Any objections to the Sale(s) shall be filed and served so as **to be received no later than 4:00 p.m. (prevailing Eastern Time) on November [___], 2013** by: (a) the Debtor's proposed lead counsel, Cole, Schotz, Meisel, Forman & Leonard P.A., 500 Delaware Avenue, Suite 1410, Wilmington, Delaware 19801 (Attn.: Patrick Reilley, Esq.); (b) the Debtor's proposed corporate counsel, Cooley LLP, 101 California Street, 5th Floor, San Francisco, California 94111 (Attn.: Keith McDaniels, Esq.); and (c) the Office of the United States Trustee:  U.S. Trustee, 844 King Street, Suite 2207, Lockbox #35, Wilmington, Delaware, 19899-0035 (Attn: Jane Leamy, Esq.) (collectively, the "Service Parties").

12.    The Sale(s) Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale(s) Hearing or as indicated in any notice of agenda of matters scheduled for hearing filed with the Court.

13.    The following forms of notice are approved: (a) Notice of Sale Procedures, Auction(s) Date, and Sale(s) Hearing, in the form substantially similar to that attached to the Motion as Exhibit D (the "Procedures Notice") and (b) the Notice to Counterparties to Executory Contracts and Unexpired Leases of the Debtor That May Be Assumed and Assigned (the "Cure Notice"), in the form substantially similar to that attached to the Motion as Exhibit E.

14.    The Debtor shall within two (2) business days after the entry of this Order, serve a copy of the Procedures Notice and this Order by first class mail, postage prepaid on (a) the U.S. Trustee, (b) counsel to the Official Committee of Unsecured Creditors, and if no Committee has been appointed to the 20 largest unsecured creditors of the Debtor, (c) any parties requesting notices in these cases pursuant to Bankruptcy Rule 2002, (d) all known creditors of the Debtor, (e) counsel to the Lot 1 Stalking Horse Bidder and (f) all Potential Bidders.

15.    The Debtor shall serve the Motion and the Cure Notice upon each counterparty to the Assumed Executory Contracts, and their counsel (if known), by no later than October 29, 2013.  The Cure Notice shall state the date, time and place of the Sale(s) Hearing as well as the date by which any objection to the assumption and assignment of Assumed Executory Contracts must be filed and served.  The Cure Notice also will identify the amounts, if any, that the Debtor believes are owed to each counterparty to an Assumed Executory Contract in order to cure any defaults that exist under such contract (the "Cure Amounts").

16.     If any counterparty to an Assumed Executory Contract objects for any reason to the Cure Amounts set forth in the Cure Notice, such counterparty must file with the Court a written objection (a "Cure Amount Objection") and serve such Cure Amount Objection so as to be received by the Service Parties by no later than November [_____], 2013 at 4:00 p.m. (prevailing Eastern Time) (the "Cure Objection Deadline").

17.     If a Contract or Lease is assumed and assigned pursuant to Court Order, then except for Disputed Cure Amounts (as defined herein), the Assumed Executory Contract counterparty shall receive no later than three (3) business days following the closing of the relevant Sale, the Cure Amount, if any, as set forth in the Cure Notice, with payment to be made pursuant to the terms of the Successful Bidder's Purchase Agreement.    Each Cure Amount Objection must set forth with specificity each and every asserted default in any executory contract or unexpired lease and the monetary cure amount asserted by such counterparty to the extent it differs from the amount, if any, specified by the Debtor in the Cure Notice.

18.     In the event that the Debtor and the non-debtor party cannot resolve the Cure Amount Objection, the Debtor shall segregate any disputed Cure Amounts ("Disputed Cure Amounts") pending the resolution of any such disputes by the Court or mutual agreement of the parties.    Cure Amount Objections may be resolved by the Court at the Sale(s) Hearing, or at a separate hearing either before or after the Sale(s) Hearing.    Any counterparty to an Assumed Executory Contract that fails to timely file and serve an objection to the Cure Amounts shall be forever barred from asserting that a Cure Amount is owed in an amount in excess of that set forth in the Cure Notice.

19.     If any counterparty to an Assumed Executory Contract objects for any reason to the assumption and assignment of an Assumed Executory Contract (other than a Cure Amount

6

Objection, an "Assignment Objection"), such counterparty must file and serve such Assignment Objection so as to be received by the Service Parties by no later than (the "Assignment Objection Deadline"): (i) 4:00 p.m. (prevailing Eastern Time) on November [_____], 2013; or (ii) the date otherwise specified in the Cure Notice (or, alternatively, the date set forth in the motion to assume such Assumed Executory Contract if such contract is to be assumed and assigned after the Sale(s) Hearing).  The Court shall make any and all determinations concerning adequate assurance of future performance under the Assumed Executory Contracts pursuant to sections 365(b) and (f)(2) of the Bankruptcy Code at the Sale(s) Hearing.

20.    The Debtor and the Debtor's estate shall be relieved of all liability accruing or arising after the assumption and assignment of the Assumed Executory Contracts pursuant to section 365(k) of the Bankruptcy Code.

21.    To the extent the provisions of this Order are inconsistent with the provisions of any Exhibit referenced herein or with the Motion, the provisions of this Order shall control.

22.    The Court shall retain jurisdiction over all matters arising from or related to the interpretation and implementation of this Order.

23.    Notwithstanding the possible applicability of Bankruptcy Rules 6004, 6006, 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable.

Dated: _____, 2013
        Wilmington, Delaware          _____
                                      THE HONORABLE BRENDAN L. SHANNON
                                      UNITED STATES BANKRUPTCY JUDGE

## **Exhibit 1**

**(Bidding Procedures)**

# BIDDING PROCEDURES

## Introduction

Set forth below are the bid procedures (the "***Bid Procedures***") to be employed with respect to the proposed sale or sales pursuant to Bankruptcy Code section 363 (the "***Sale(s)***") of substantially all of the Debtor's[3] assets (collectively, the "***Assets***"), which have been separated into two categories: Lot 1 and Lot 2 (each individually a "***Lot***" and collectively, the "***Lots***"), as further described on **Schedule 2** attached hereto. The Bid Procedures provide interested parties with the opportunity to qualify and participate in the Auction(s) (as defined below) and submit competing bids for the two Lots of Assets.

On October [____], 2013, the United States Bankruptcy Court for the District of Delaware (the "***Court***") entered an order approving, among others things, the following Bid Procedures. Additionally, on November [____], 2013, as further described below, the Court will conduct a hearing ("***Sale Hearing***") at which the Debtor will seek entry of an order (the "***Sale Order***") authorizing and approving the Sale(s) to one or more Successful Bidders (as defined below).

## Key Dates for Potential Bidders

These Bidding Procedures, among other things, provide interested parties with the opportunity to qualify and participate in Auction(s) (if any) and submit competing bids for one or both of the categories of Assets. The Debtor shall, in the manner set forth herein, assist Potential Bidders (as defined below) in conducting their respective due diligence investigations and shall accept bids submitted by such Potential Bidders in accordance with the procedures set forth herein until **5:00 p.m. (prevailing Eastern Time) on November 12, 2013**.

The key dates (subject to modification in a manner set forth herein) for the Bidding Process (as defined below) are as follows:

| | |
|---|---|
| 5:00 P.M. (prevailing Eastern Time) on November 12, 2013 | Bid Deadline |
| 10:00 A.M. (prevailing Eastern Time) on November 15, 2013 | Auction Date (if necessary) |
| 10:00 A.M. (prevailing Eastern Time) on [November 19], 2013 | Sale Hearing |

---

[3] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the *Motion of the Debtor and Debtor in Possession Pursuant to Section 105(a), 363 and 365 of the Bankruptcy Code for an Order (i)(a) Approving Procedures in Connection With the Sale(s) of Substantially all of the Debtor's Assets; (b) Approving the Lot 1 Stalking Horse Protections; (c) Scheduling Related Auction(s) and Hearing to Consider Approval of the Sale(s); (d) Approving Procedures Related to the Assumption and Assignment of Certain of the Debtor's Executory Contracts and Unexpired Leases; (e) Approving the Form and Manner of Notice Thereof; (f) Authorizing the United States Trustee to Appoint a Consumer Privacy Ombudsmen, and (g) Granting Related Relief; and (ii)(a) Authorizing the Sale(s) of Substantially All the Debtor's Assets Pursuant to the Successful Bidder's Purchase Agreement Free and Clear of Liens, Claims, Encumbrances, and Other Interests (b) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (c) Granting Related Relief.*

## Purchase Agreement for Lot 1

Attached hereto as **Schedule 1(a)** is a copy of the Lot 1 Stalking Horse Agreement. Pursuant to the Lot 1 Stalking Horse Agreement, or a Successful Bidder's modified version thereof agreed to by the Debtor, the Successful Bidder shall acquire the relevant Assets in Lot 1 that are the subject of its bid and purchase agreement free and clear of any and all Interests (as defined below). A Successful Bidder will be required to enter into a purchase agreement prior to the conclusion of the applicable Auction.

## Purchase Agreement for Lot 2

Attached hereto as **Schedule 1(b)** is a form purchase agreement (together with any ancillary agreements, the "***Lot 2 Purchase Agreement***," together with the Lot 1 Stalking Horse Agreement, collectively, the "***Purchase Agreements***"). Pursuant to the Lot 2 Purchase Agreement, or a Successful Bidder's modified Purchase Agreement agreed to by the Debtor, the Successful Bidder shall acquire the relevant Assets in Lot 2 that are the subject of its bid and Purchase Agreement free and clear of any and all Interests. A Successful Bidder will be required to enter into a Purchase Agreement prior to the conclusion of the applicable Auction.

## Bid Procedures

Any person or entity who wishes to participate in the Bidding Process must meet the participation requirements to become a Potential Bidder as specified below, and must thereafter timely submit a Qualified Bid (as defined below) to become a Qualified Bidder (as defined below). Neither the Debtor nor its representatives shall be obligated to furnish information of any kind whatsoever to any person or entity that is not a Potential Bidder (or its legal counsel and financial advisors). The Debtor and its representatives shall use good faith efforts to provide all Potential Bidders with substantially similar access and information.

The Debtor and its representatives, in consultation with the Consulting Parties (as defined below), the Official Committee of Unsecured Creditors (the "***Committee***"), if appointed, and the DIP Lenders, and their respective advisors (collectively, the "***Consulting Parties***"), shall (i) receive and evaluate all offers made hereunder, (ii) determine whether any person or entity has met the participation requirements to become a Potential Bidder and has timely submitted a Qualified Bid so as to become a Qualified Bidder and (iii) negotiate in good faith with respect to any Qualified Bids. The Debtor and its representatives shall coordinate the efforts of Potential Bidders in conducting any required due diligence investigations (collectively, all of the aforementioned actions, the "***Bidding Process***"). The Debtor shall promptly inform all other Qualified Bidders of all Qualified Bids and any information received related to the terms and conditions of such Qualified Bids.

## Participation Requirements

Any person or entity that wishes to conduct due diligence with respect to the Assets must first deliver to the Debtor an executed confidentiality agreement in form and substance satisfactory to the Debtor (it being understood that any person or entity who previously signed a

3

confidentiality agreement with the Debtor in connection with the Sale shall not be required to execute a new confidentiality agreement). The executed confidentiality agreement must be signed and transmitted by the person or entity wishing to become a Potential Bidder so as to be received by each of the following parties prior to any dissemination of confidential information: (i) the Debtor's financial advisor, Arch & Beam Global LLC ("*Arch + Beam*"), 2500 Camino Diablo, Ste 108, Walnut Creek, CA 94597 (Attn.: Matthew English); (ii) the Debtor's counsel, Cole, Schotz, Meisel, Forman & Leonard P.A. ("*Cole Schotz*"), 500 Delaware Avenue, Suite 1410, Wilmington, Delaware 19801 (Attn.: Patrick Reilley, Esq.); and the Debtor's corporate counsel, Cooley LLP ("*Cooley*"), 101 California Street, 5th Floor, San Francisco, California 94111 (Attn.: Keith McDaniels, Esq.).

A "*Potential Bidder*" is a person or entity that the Debtor determines is reasonably likely to: (a) submit a *bona fide* offer for all or a portion of the Assets and (b) be able to consummate the Sale(s) if selected as a Successful Bidder for the relevant Assets.

### Due Diligence

The Debtor may afford each Potential Bidder the time and opportunity to conduct reasonable due diligence; *provided, however*, that neither the Debtor nor any of its representatives shall be obligated to furnish any due diligence information (i) at any time, to any person or entity other than a Potential Bidder or (ii) after the Bid Deadline, to any Potential Bidder.

The Debtor may, in the exercise of its business judgment, extend a Qualified Bidder's time to conduct due diligence after the Bid Deadline until the Auction; *provided, however*, that the Successful Bidder(s) and the Back-Up Bidder(s) (as defined below) shall be permitted to continue to conduct due diligence until closing(s) of the Sale(s) (subject to the terms of the applicable Purchase Agreement(s)); *provided, further*, that no Qualified Bid shall be subject to any condition related to due diligence after the Bid Deadline.

### Bid Deadline

A Potential Bidder who desires to make a bid on one or both Lots of the Assets, must deliver a bid for each Lot that satisfies all of the bid requirements set forth below so as to **actually be received** by Arch + Beam, Cole Shotz, and Cooley no later than **November 12, 2013 at 5:00 p.m. (prevailing Eastern Time)** (the "*Bid Deadline*"). The Debtor will promptly provide copies of all bids received to the Consulting Parties. Each bid shall be served by courier, facsimile, e-mail or as otherwise specified by the Debtor. The Debtor, in consultation with the Consulting Parties, may extend the Bid Deadline once or successively, but is not obligated to do so. Any Potential Bidder who fails to submit a bid in advance of the Bid Deadline consistent with the foregoing requirements shall not be permitted to participate in the Bidding Process and will not be a Qualified Bidder.

4

## Bid Requirements

To participate in the Bidding Process, a bidder must be a Potential Bidder and must deliver a written offer to Arch + Beam, Cole Shotz, and Cooley which includes, at a minimum, the following items (the "***Required Bid Materials***") prior to the Bid Deadline:

1.  An executed letter of intent that, among other things, identifies (a) the specific Lot that the Potential Bidder intends to purchase and (b) the purchase price for such Lot. The purchase price for Lot 1 shall be payable in cash and equal to or greater than $2,900,000 plus (a) the Lot 1 Break-Up Fee in the amount of $150,000 and (b) the Expense Reimbursement in an amount not to exceed the lesser of $150,000 and the Lot 1 Stalking Horse's reasonable out-of-pocket documented expenses incurred in connection with the Lot 1 Stalking Horse Agreement (the "***Lot 1 Minimum Bid Price***"). The purchase price for Lot 2 shall be payable in cash and equal to or greater than $[_____] (the "***Lot 2 Minimum Bid Price***," together with the Lot 1 Minimum Bid Price, collectively, the "***Minimum Bid Price***").

2.  A written acknowledgment that the bid (a) is not subject to any due diligence or financing contingency, (b) is not conditioned on the payment in any circumstances of a break-up fee, expense reimbursement or similar type of payment to the bidder; *provided*, *however*, that this subsection (b) shall not apply to the Lot 1 Stalking Horse or the Lot 2 Stalking Horse, if any, (c) is irrevocable until the conclusion of the relevant Auction (unless it is selected as the Successful Bid or Back-Up Bid for the particular Lot of Assets, in which case it shall remain binding as set forth below), (d) will not require any indemnity or similar obligation by the Debtor and (e) is not subject to any approvals, consents or conditions except as specified therein.

3.  A written acknowledgement by the bidder that it agrees to all of the terms for sale set forth in these Bid Procedures and that the offer constitutes a good faith *bona fide* offer to purchase the Assets identified in its bid.

4.  Delivery by certified check or wire transfer of a good faith deposit in immediately available funds (the "***Deposit***") equal to 10% of the Minimum Bid Price for each Lot of Assets that the bidder is interested in purchasing. The Deposit shall be held in escrow and will be refunded on the terms set forth below.

5.  Evidence or a statement indicating that the bidder has obtained authorization and approval from its board of directors (or comparable governing body) with respect to the submission and consummation of its bid and acceptance of the terms of sale in these Bid Procedures, or a representation that no such authorization or approval is required and that any and all consents required in connection with the submission and consummation of the bid have been obtained and that no other consents are required.

6.  Full disclosure of the identity of each entity that will be bidding for or purchasing the relevant Assets or otherwise participating in connection with such bid, and the complete terms of any such participation, including any agreements, arrangements or understandings concerning a collaborative or joint bid or any other combination concerning the proposed bid.

7.  A statement that the bidder consents to the jurisdiction of the Court.

8.  Evidence of sufficient cash on hand or written evidence of a binding, unconditional (except for customary closing conditions) commitment for financing or other evidence of the ability to consummate the Sale satisfactory to the Debtor with appropriate contact (and any other necessary) information for such financing sources.

9.  An affirmation that the cure amounts under any assigned executory contracts and any applicable transfer taxes or similar charges will be the bidder's responsibility; and provision of adequate assurance of future performance with respect to such executory contracts and/or unexpired leases.

10. Such other information as may be reasonably requested in writing by the Debtor.

A bid received from a Potential Bidder that includes all of the Required Bid Materials and is actually received by the Bid Deadline is a "***Qualified Bid***" if the Debtor, in consultation with the Consulting Parties, determines that such bid evidences a *bona fide* interest in, and ability to purchase, the Assets identified in such bid. A Potential Bidder that submits a Qualified Bid (each a "***Qualified Bidder***") shall be entitled to participate in the Auction(s). The Debtor reserves the right to contact bidders before or after the Bid Deadline to discuss or clarify the terms of their bid and to indicate any terms which may need to be modified in order to make their bid a "Qualified Bid" or otherwise evaluate their bid.

The Qualified Bid for each Lot selected by the Debtor, in consultation with the Consulting Parties, as the highest or otherwise best bid (each, the "***Opening Bid***") for each Lot following the Bid Deadline and prior to the start of the relevant Auction shall be provided to all other Qualified Bidders no less than one (1) business day prior to the commencement of the relevant Auction.

### Credit Bids

The right of any party qualifying under Section 363(k) of the Bankruptcy Code to credit bid, up to the full amount of their claims under the prepetition or postpetition credit facilities, shall be fully preserved in all circumstances (the "***Credit Bid***"). For the avoidance of doubt, a party making a Credit Bid will be deemed a Qualified Bidder and entitled to bid at Auction provided that such Credit Bid also qualifies with subparagraphs 2, 3, 5, 6, 7, 9 and 10 of the Bid Requirements above.

6

### The Auction(s)

To the extent the Debtor receives more than one Qualified Bid for a particular Lot of the Assets identified on Schedule 2 on or before the Bid Deadline or as otherwise decided by the Debtor, the Debtor will conduct an auction (the "*Auction(s)*") for each such Lot of Assets to take place on the date that is not less than three (3) business days prior to the Sale Hearing at the offices of Cooley LLP, 101 California St., 5th Floor, San Francisco, California 94111, commencing at **10:00 a.m. (prevailing Pacific Time)** on November [15], 2013 (the "*Auction Date*"). If the Debtor receives more than one Qualified Bid for both Lot 1 and Lot 2, the Auction for Lot 1 shall take place first and the Auction for Lot 2 shall begin immediately after the conclusion of the Auction for Lot 1. The Debtor reserves the right, in consultation with the Consulting Parties, to adjourn or cancel the Auction Date, or change the location of the Auction or the Auction Date to another Auction Date, at any time by delivering notice of such adjournment, cancellation or modification to the applicable Qualified Bidders.

The Auction(s) shall be governed by the following procedures, which procedures shall be subject to modification by the Debtor, in consultation with the Consulting Parties, as the Debtor deems necessary, to better promote the goals of the Auction(s) and to comply with its fiduciary obligations:

(a)    Each Qualified Bidder shall appear in person at the Auction(s) through a duly authorized representative, unless the Debtor has agreed to a different form of appearance by a particular Qualified Bidder.

(b)    Only the representatives of (i) the Debtor, (ii) persons or entities making Qualified Bids, (iii) the DIP Lenders, and (iv) the Committee shall be permitted to be present at the Auction(s). For the avoidance of doubt, although these parties shall be permitted to be present at the Auction(s), only Qualified Bidders may bid at the Auction(s).

(c)    The material terms of each Qualified Bid selected from time to time by the Debtor, in consultation with the Consulting Parties, as being the highest or otherwise best offer for a particular Lot of the Assets at any such time (each such Qualified Bid selected at any time, the "*Leading Bid*" at such time) shall be fully disclosed to all other Qualified Bidders for the relevant Lot of Assets. For the avoidance of doubt, each Leading Bid and each bid identified as being the highest or otherwise best offer for a particular Lot of Assets at any time shall have no conditions other than those disclosed.

(d)    The Auction(s) shall commence with the Debtor confirming the particulars of the Opening Bid for each Lot of the Assets and asking for higher or otherwise better offers for each Lot of the Assets. The first incremental competitive bid at the Auction for the Lot 1 Assets shall be at least $100,000 over the Initial Bid for the Lot 1 Assets. The first incremental competitive bid at the Auction for the Lot 2 Assets shall be at least $50,000 over the Initial Bid for the Lot 2 Assets.

7

(e)     The Auction(s) shall continue with subsequent rounds of bidding and, after each round, the Debtor shall announce the Leading Bid. A Qualified Bidder that does not submit a Qualified Bid in any round of bidding with value greater than the Leading Bid as of the commencement of such round shall not be able to submit further bids in any subsequent round.

(f)     The Debtor shall provide for a court reporter to be present at, and prepare a transcript of, the Auction(s). The Debtor may determine to make all or any part of the transcript subject to confidentiality requirements and seal.

(g)     Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale(s).

(h)     All Qualified Bidders shall have the right to submit additional bids and make modifications to their respective Purchase Agreements at the Auction(s) to improve such bids.

(j)     The Auction(s) may include individual negotiations with Qualified Bidders and/or open bidding in the presence of all other Qualified Bidders.

(k)     The Debtor reserves the right, in consultation with the Consulting Parties, to (i) determine in its reasonable discretion which Qualified Bid is the highest or otherwise best bid for a particular Lot of Assets and (ii) reject at any time, without liability, any bid that the Debtor, in its business judgment, deems to be (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules or procedures set forth therein or in the Bid Procedures Order, or (3) contrary to the best interests of the Debtor and its estate.

(l)     The Auction(s) shall continue until there is only one bid that the Debtor, in consultation with the Consulting Parties, determines, subject to Court approval, constitutes the highest or otherwise best offer for a particular Lot of the Assets from among the Qualified Bids submitted for such Lot of the Assets at the relevant Auction (the "*Successful Bid*"). In determining the Successful Bid for a particular Lot of Assets, the Debtor, in the exercise of its business judgment and in consultation with the Consulting Parties, shall consider all relevant factors including, without limitation: (i) the amount of the purchase price, (ii) the form of consideration being offered, (iii) the ability of the Qualified Bidder to complete the transaction constituting the Successful Bid (including without limitation, the ability to obtain any required regulatory approvals or consents or the lack thereof), (iv) the proposed timing thereof, (v) the contracts being assumed by the Qualified Bidder and the rights of the Qualified Bidder and the Debtor with respect to the termination thereof, (vi) the number, type and nature of the changes to the Purchase Agreement requested by the Qualified Bidder, and (vii) the net benefit to the Debtor's estate. The Qualified Bidder submitting such Successful Bid (the "*Successful Bidder*") shall have the rights and responsibilities of the

8

purchaser, as set forth in the Purchase Agreement, or modified definitive purchase agreement, as applicable, and in the terms and conditions of the Successful Bid provided at the relevant Auction.

(m)     At the conclusion of the Auction(s), a Successful Bidder(s) shall have negotiated and executed a Purchase Agreement(s) with the Debtor.

(n)     The next highest or otherwise best bid for each Lot of the Assets will be the "***Back-Up Bid***" and the maker of each such bid will be the "***Back-Up Bidder***." Prior to the Sale Hearing, but in no event later than two (2) days after conclusion of the applicable Auction, the Back-Up Bidder and the Debtor shall complete and execute a Purchase Agreement, for the relevant Lot of Assets, and any other applicable agreements, contracts, instruments, or other documents evidencing and containing the terms and conditions upon which each such Successful Bid and Back-Up Bid was made (subject, in the case of the Debtor, to the qualifications set forth in "***Acceptance and Termination of Qualified Bids***" below).

THE SUCCESSFUL BID(S) SUBMITTED AT THE AUCTION(S) SHALL CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING ON THE SUCCESSFUL BIDDER(S) FROM THE TIME THE BID IS SUBMITTED UNTIL THIRTY (30) DAYS AFTER ENTRY OF THE SALE ORDER AND ON THE BACK-UP BIDDER(S) FOR FORTY-FIVE (45) DAYS AFTER THE AUCTION(S) HAVE OCCURRED.  EACH QUALIFIED BID THAT IS NOT THE SUCCESSFUL OR THE BACK-UP BID FOR THE RELEVANT LOT OF ASSETS AS APPROVED BY THE COURT AT THE SALE HEARING SHALL BE DEEMED WITHDRAWN AND TERMINATED AT THE CONCLUSION OF THE RESPECTIVE AUCTION.

## Acceptance and Termination of Qualified Bids

The Debtor intends to sell all or substantially all of its Assets, separated into Lots, to the Successful Bidder(s) upon the approval of the Successful Bid(s) and the Back-Up Bid(s) by the Court after the Sale Hearing.  The Debtor's presentation of a particular Successful Bid and Back-Up Bid to the Court for approval does not constitute the Debtor's acceptance of such bid.  The Debtor will be deemed to have accepted such a bid only when the bid has been approved by the Court at the Sale Hearing.  The participation of the DIP Lenders in the Auction process shall not constitute their consent to the sale of their collateral free and clear of their respective liens.

## Debtor's Option to Select a Lot 2 Stalking Horse Bidder

Based upon Qualified Bids received for Lot 2, the Debtor may in consultation with the Consulting Parties, but shall not be obligated to, at any time designate a Qualified Bidder for Lot 2 as a "***Lot 2 Stalking Horse Bidder***."  Notice of selection of such Lot 2 Stalking Horse Bidder shall be immediately given to all Qualified Bidders and filed with the Court.

1. <u>Lot 2 Stalking Horse Bidder Break-Up Fee</u>: The Debtor may, in its business judgment and in consultation with the Consulting Parties, provide a selected Lot 2

9

Stalking Horse Bidder (if any) with a "break-up fee" in an amount not to exceed 5% of the Lot 2 Minimum Bid Price (the "*Lot 2 Break-Up Fee*").

2. Overbids Prior to Lot 2 Auction: In the event that the Debtor selects a Lot 2 Stalking Horse Bidder, then the bid of each Potential Bidder for the Lot 2 Assets, in order to constitute a Qualified Bid, shall in addition to meeting the other criteria set forth in these Bid Procedures, be (i) in an amount that is sufficient to pay the Lot 2 Break-Up Fee plus (ii) an amount equal to or greater than $50,000 above the bid of the Lot 2 Stalking Horse Bidder.

### Debtor's Option to Divide Lot 2 into Sub-Lots

The Debtor reserves the right, in consultation with the Consulting Parties, to divide the Lot 2 Assets into one or more sub-lots if, in the Debtor's business judgment, it believes such a division or divisions would promote the goals of the Auction process.

### Sale Hearing

The Sale Hearing shall be conducted by the Court on November [____] **2013 at [____].m. (prevailing Eastern Time)** and may be adjourned or rescheduled, in consultation with the Consulting Parties, in open court without further notice. At the Sale Hearing, the Debtor will seek Court approval of a Successful Bid and a Back-Up Bid for each Lot of the Assets. Unless the Court orders otherwise, the Sale Hearing shall be an evidentiary hearing on matters relating to the Sale(s) and there will be no further bidding at the Sale Hearing.

In the event that the Successful Bidder for a particular Lot of Assets cannot or refuses to consummate the relevant Sale because of a breach or failure on the part of such Successful Bidder, the Back-Up Bidder for that Lot of Assets will be deemed the new Successful Bidder and the Debtor shall be authorized, but not required, to close with such Back-Up Bidder on the terms of the Back-Up Bid without further order of the Court.

### Terms of the Sale(s)

Except as and to the extent provided in the applicable Purchase Agreement(s), and subject to Court approval, the sale of the Assets shall be on an "AS IS, WHERE IS" basis and without representations or warranties of any kind, nature or description by the Debtor or its agents, and by submitting a bid, each bidder is deemed to acknowledge and agrees to the foregoing. Subject to Court approval and the terms of the applicable Purchase Agreement(s), all of the Debtor's right, title and interest in and to the Assets shall be sold free and clear of all liens, claims, interests, encumbrances, rights, remedies, restrictions, liabilities and contractual commitments of any kind or nature whatsoever, whether arising before or after the petition date of the Debtor's chapter 11 case, whether at law or in equity (collectively "*Interests*"), to the fullest extent available under Bankruptcy Code section 363 with such Interests, if any, attaching to the net proceeds of the sale of the Assets in the same order, dignity and priority as existed at the commencement of the bankruptcy cases and subject to the conditions set forth in the respective Purchase Agreements. Notwithstanding the foregoing, the Debtor, subject to any

10

prior order of the Court, reserves the right to contest the validity, nature, extent or priority of and/or seek to set aside or avoid any and all Interests under applicable law.

### Return of Deposits

Each Deposit submitted pursuant to the Bid Procedures will be held in escrow by the escrow agent (the "*Escrow Agent*") and will not become property of the Debtor's estate absent further order of the Court.  Within three (3) business days after the conclusion of the last Auction, the Escrow Agent shall return the Deposits made by any Qualified Bidder who is not a Successful Bidder or a Back-Up Bidder, and the Escrow Agent shall return any of the Back-Up Bidder's Deposits within three (3) business days following the termination of such Back-Up Bid in accordance with the provisions set forth herein.

If the Successful Bidder(s) or the Back-Up Bidder(s), as applicable, fails to consummate the approved Sale(s) because of a breach or failure to perform on the part of the Successful Bidder(s) or the Back-Up Bidder(s), as applicable, the Debtor shall be entitled to retain the Deposits of each such Successful Bidder(s) or Back-Up Bidder(s), as applicable, in addition to other remedies available to the Debtor under applicable law.  The Debtor shall credit the Deposit of each Successful Bidder(s) or Back-Up Bidder(s), as applicable, towards the purchase price at the time of funding consistent with the terms of the applicable Purchase Agreement.

### Reservation of Rights

The Debtor reserves the right to, in consultation with the Consulting Parties, (i) modify, supplement, amend or waive the Bid Procedures, including, without limitation, modifying the requirements for a Qualified Bid at or prior to the Auction(s), if such modification will better promote the goals of the Auction(s), (ii) impose, at or prior to the Auction(s), additional customary terms and conditions on the Sale(s), (iii) adjourn or cancel the Auction(s) at the Auction(s) and/or (iv) adjourn the Sale Hearing in an open court without further notice, in each case, in such a manner that is not materially inconsistent with any prior order of the Court and the Debtor deems such modifications to be consistent with the performance of its fiduciary obligations.

### Independent Evaluation

Except as otherwise expressly provided in the Bid Procedures or any Purchase Agreement, by submitting a bid, each Qualified Bidder shall be deemed to acknowledge and represent that it (i) has had an opportunity to conduct any and all reasonable due diligence regarding the Debtor, the Assets and the Sale(s) prior to making its bid, (ii) has relied solely upon its own independent review, investigation, and inspection of any documents and the Assets in making its bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise regarding the Assets, or the completeness of any information provided in connection with the Debtor, the Assets and the Sale(s).

11

## Jurisdiction

The Court shall retain exclusive jurisdiction over any matter or dispute relating to the Sale(s), the Bid Procedures, any Purchase Agreement, and any other matter that in any way relates to the foregoing.  All entities that submit a bid for the purchase of the Assets shall be deemed to have (i) consented to the core jurisdiction of, and venue in, the Court and (ii) waived any right to a jury trial in connection with any disputes relating to the Sale(s), the Bid Procedures, any Purchase Agreement and any other matter that in any way relates to the foregoing.

# # # # #

12

## Schedule 1(a)

## Lot 1 Stalking Horse Agreement

[To Be Provided.]

**Schedule 1(b)**

**Lot 2 Form Purchase Agreement**

[To Be Provided.]

## Schedule 2

## Description of Assets in Lot 1

The Debtor's Assets included in Lot 1 shall include:[1]

(a)    all Software owned, marketed, licensed, supported, maintained, used or under development by the Seller, including all Software embodied in or related to the Seller Products, and all Intellectual Property rights therein, excluding Third-Party Software licensed to the Seller pursuant to Excluded Contracts

(b)    all other Seller Intellectual Property, including all Seller Registered Intellectual Property;

(c)    all deposits, security deposits, advances, earnest payments, performance bonds, security payments or deposits, prepayments, prepaid expenses, credits or other similar Assets of any kind owned or controlled by the Seller and relating to the Assumed Liabilities, but only to the extent relating to the use or ownership of the Acquired Assets (including Liabilities arising under the Acquired Contracts) after the Closing (the "Deposits");

(d)    the Acquired Contracts;

(e)    all rights, remedies, defenses, Claims (including Claims for refunds or adjustments and Claims for breach of express or implied warranties), recoveries, rights to offset, and causes of action against customers, suppliers, insurers or any other Person, whether known or unknown, under the Acquired Contracts or of any nature relating to the Acquired Assets or Assumed Liabilities, including all rights to enforce any assignment of, license to, or confidentiality covenant with respect to, any Seller Intellectual Property regardless of whether such rights arise under an Acquired Contract or Excluded Contract; and

(f)    all customer support data, "bug" databases, and all operating records, data and other materials maintained by the Seller, including research and development materials, service and warranty records, operating guides and manuals, creative materials, intellectual property materials, studies, cost and pricing information, supplier lists and records and business plans, and other similar materials, documents and other records, or copies thereof, (whether in written or other form) of any kind presently in or hereafter coming into the care, custody or control of the Seller (including any such records held by others on behalf of the Seller).

## Description of Assets in Lot 2

The Debtor's Assets included in Lot 2 shall include all of the Debtor's Assets not included in Lot 1, *provided, however,* that neither the Lot 1 Assets nor the Lot 2 Assets shall include:

(a)    any cash in any of the Seller's bank accounts;

---

[1] Capitalized terms used but not defined in this description of the Lot 1 and Lot 2 Assets shall have the meanings ascribed to them in the Lot 1 Stalking Horse Agreement.

(b)      any accounts receivable;

(c)      any books and records of account and financial records, and all books and records relating to or comprising the Seller's corporate charter, qualifications to do business as a corporation, taxpayer and other identification numbers, minute books, seal, stock record books, transfer records and such other documentation relating to the organization, maintenance and existence of the Seller as a legal entity;

(d)      any prepayment, refund, claim, offset or other right of the Seller related to any Tax arising from or in connection with the ownership of the Assets or operation of the Business during the Pre-Closing Tax Period;

(e)      any (i) Seller Employee Plans and related agreements and any associated funding media, assets, reserves, credits and service or other agreements and all books, records, files and documents created, filed or maintained in connection with such Seller Employee Plans, and any assets, bonds, insurance policies, trust agreements and service contracts relating thereto, and (ii) employment, severance, individual compensation or similar agreements;

(f)      all rights and recoveries involving insurance policies; and

(g)      all claims and causes of action under chapter 5 of the Bankruptcy Code.

The Debtor reserves the right, in consultation with the Consulting Parties, to divide the Lot 2 Assets into one or more sub-Lots if, in the Debtor's business judgment, it believes such a division or divisions would promote the goals of the Auction process.

# # # # #

2