# **EXHIBIT A**

## Exhibit A

### (Highlighted Provisions Pursuant to Del. Bankr. L.R. 6004-1)

In accordance with Local Rule 6004-1, the Debtor respectfully represents the following:[1]

(1) **Sale(s) to an Insider**: The Debtor is not aware of a prospective buyer for either Lot 1 or Lot 2 that is an Insider of the Debtor.

(2) **Agreements with Management**: As a result of the wind-down of the Debtor's operations, certain former employees and a member of the Debtor's management team (the "Former Employees") have resigned their positions of employment with the Debtor and accepted offers of employment with an affiliate of the Lot 1 Stalking Horse Bidder. At the Debtor's request, an affiliate of the Lot 1 Stalking Horse Bidder is entering into a services agreement with the Debtor contemporaneously herewith and in the ordinary course of its business, to provide the Debtor with the services of the Former Employees to assist for a limited period with the wind-down of the Debtor's operations. The Debtor is not aware of any agreements between the Debtor's management and prospective buyers for Lot 2.

(3) **Releases**: No releases have been entered into in connection with the Sale.

(4) **Private Sale/No Competitive Bidding**: The Sale for both Lot 1 and Lot 2 is being conducted pursuant to the competitive bidding process detailed in the Motion.

(5) **Closing and Other Deadlines**: The consummation of the transactions contemplated by the Purchase Agreement(s) of the Successful Bidder(s) shall take place at a closing to be held at the offices of Cooley LLP, 101 California Street, 5th Floor, San Francisco, California 94111 or at such other location as shall be timely communicated to all entities entitled to attend the Auction(s).

(6) **Good Faith Deposit**: All Potential Bidders will be required to deliver a certified check or wire transfer of a good faith deposit in immediately available funds equal to 10% of the Minimum Bid Price for each Lot of Assets that the bidder is interested in purchasing.

(7) **Interim Arrangements with Proposed Buyer**: The Debtor has not entered into any interim arrangements with the Lot 1 Stalking Horse Bidder or any other potential buyer of either Lot 1 or Lot 2.

(8) **Use of Proceeds**: Upon the Closing of the Sale of the Lot 1 Assets, if the Lot 1 Stalking Horse Bidder is *not* the Successful Bidder for Lot 1, the sale proceeds shall be paid to the Debtor for distribution at the time of the Lot 1 Closing as

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

follows: (a) *first*, if the Sale of Lot 1 is to a party other than the Lot 1 Stalking Horse Bidder, the Expense Reimbursement and the Lot 1 Break-Up Fee shall become due and payable to the Lot 1 Stalking Horse Bidder and shall be paid as an administrative expense of the Debtor in accordance with the Lot 1 Stalking Horse Agreement, and (b) *second*, the remaining cash proceeds of the Sale of Lot 1 shall be paid over to the Debtor for subsequent distribution in accordance with the priorities set forth in the Bankruptcy Code. If the Lot 1 Stalking Horse Bidder *is* the Successful Bidder, upon the Lot 1 Closing, the cash proceeds of the Lot 1 Sale shall be paid over to the Debtor for distribution in accordance with the priorities set forth in the Bankruptcy Code. Further details regarding the payment of the Lot 1 Break-Up Fee and Expense Reimbursement are provided below. Upon the Lot 2 Closing, the cash proceeds of the Lot 2 Sale shall be paid over to the Debtor for distribution in accordance with the priorities set forth in the Bankruptcy Code.

(9) **Lot 1 Break-Up Fee and Expense Reimbursement**: Pursuant to the terms of the Lot 1 Stalking Horse Agreement, the Lot 1 Break-Up Fee and the Expense Reimbursement shall be paid on the first (1st) Business Day after the earlier to occur of any of the following events:

    a.    the Debtor voluntarily withdraws the Motion other than in connection with the Debtor's termination of the Lot 1 Stalking Horse Agreement in accordance with Section 8.1(e) of the Lot 1 Stalking Horse Agreement;

    b.    the Bankruptcy Court approves an Alternative Transaction or Restructuring Transaction (each as defined in the Lot 1 Stalking Horse Agreement) and such transaction closes and becomes effective;

    c.    if the Debtor is no longer under the jurisdiction of the Bankruptcy Court through either the dismissal of the chapter 11 case or the consummation of a plan of reorganization in the chapter 11 case, and the Debtor consummates an Alternative Transaction or Restructuring Transaction prior to a date eighteen (18) months following the date hereof and such transaction closes and becomes effective; or

    d.    the Lot 1 Stalking Horse Bidder terminates the Lot 1 Stalking Horse Agreement in accordance with the provisions of Section 8.1(d) of the Lot 1 Stalking Horse Agreement.

(10) **Tax Exemption**: No tax exemptions under section 1146(a) of the Bankruptcy Code are contemplated in connection with the Sale of Lot 1 or Lot 2.

(11) **Record Retention**: The Debtor will continue to have access to its books and records related to the Assets.

(12) **Sale of Avoidance Actions**: Neither the Sale of Lot 1 nor Lot 2 involves the sale of chapter 5 causes of action.

(13) **Requested Findings as to Successor Liability**: The Successful Bidder(s) would be undertaking certain Assumed Liabilities pursuant to the Successful Bidder's Purchase Agreement(s). The Successful Bidder(s) is assuming only those liabilities, and all other liabilities not expressly assumed by the Successful Bidder(s) under the Successful Bidder's Purchase Agreement(s), whether or not incurred or accrued on or after the date on which the Sale(s) is closed, shall be retained by the Debtor.

(14) **Sale Free and Clear of Liens and Other Interests**: The Debtor is seeking to sell the Lot 1 and Lot 2 Assets free and clear of liens and other interests pursuant to Section 363(f) of the Bankruptcy Code, unless otherwise provided in the Successful Bidder's Purchase Agreement(s). The Lot 1 Stalking Horse Bidder is not willing to close on the Lot 1 Sale if it does not receive the Lot 1 Assets, free and clear of all liens, claims, encumbrances and interests.

(15) **Credit Bid**: The Debtor seeks authorization in the Motion for the right of any party qualifying under Section 363(k) of the Bankruptcy Code to credit bid, up to the full amount of their claims under the prepetition or postpetition credit facilities, to be fully preserved in all circumstances (the "Credit Bid"). For the avoidance of doubt, a party making a Credit Bid will be deemed a Qualified Bidder and entitled to bid at Auction provided that such Credit Bid also qualifies with subparagraphs 2, 3, 5, 6, 7, 9 and 10 of the Bidding Procedures.

(16) **Relief from Bankruptcy Rule 6004(h)**: As noted in the Motion, the Debtor is requesting relief from the 14-day stay imposed by Rules 6004(h) and 6006(d).

(17) **Non-Solicitation Provisions**: Pursuant to Section 9.3 of the Lot 1 Stalking Horse Agreement and as more fully described therein, the Debtor is prohibited from, *inter alia*, soliciting bids for its Assets from the date of the Lot 1 Stalking Horse Agreement until the Bankruptcy Court's entry of the Bidding Procedures Order.