## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NIRVANIX, INC., | Case No. 13-12595 (BLS) |
| Debtor.[1] | **Hearing Date: November 5, 2013 at 12:00 p.m. (ET)**<br>**Objection Deadline: October 29, 2013 at 4:00 pm (ET)** |

### DEBTOR'S MOTION FOR ENTRY OF AN ORDER APPROVING
### KEY EMPLOYEE RETENTION PLAN PURSUANT TO
### SECTIONS 105(a), 363(b)(1) AND 503(c)(3) OF THE BANKRUPTCY CODE

Nirvanix, Inc., the debtor and debtor in possession in the above-captioned case (the "Debtor"), hereby moves (the "Motion") for entry of an order, pursuant to sections 105(a), 363(b)(1) and 503(c)(3) of title 11 of the United States Code (the "Bankruptcy Code"), approving a retention plan for certain non-insider Key Employees (as defined below) of the Debtor. In support of the Motion, the Debtor relies upon and incorporates by reference the *Declaration of Debra Chrapaty In Support of Debtor's Motion for Order Approving Key Employee Retention Plan Pursuant to Sections 105(a), 363(b)(1) and 503(c)(3) of the Bankruptcy Code* (the "Chrapaty Declaration"), which is annexed hereto as Exhibit A. In further support of the Motion, the Debtor, by and through its undersigned counsel, respectfully represents:

### PRELIMINARY STATEMENT

A primary objective in this chapter 11 case is to effectuate the sale of substantially all of the Debtor's assets pursuant to a sale process under section 363 of the Bankruptcy Code. The recoveries that will ultimately be realized by the Debtor's creditors depend, in large part, on the

---

[1] The last four digits of the Debtor's federal tax identification number are 6586. The Debtor's headquarters and mailing address is 9191 Towne Centre Drive, Suite 510, San Diego, CA 92122.

1

successful consummation of the Debtor's sale efforts.    The Debtor has identified certain employees, based on their experience, institutional knowledge, expertise, and vendor and customer relationships, that it deems crucial to the continued operation of the Debtor's business and ability to meet closing conditions reasonably likely to be part of any bids for the Debtor's assets.    The Key Employee Retention Plan (the "KERP") discussed herein affects a total of eleven (11) of the Debtor's non-insider employees (collectively, the "Key Employees").    It is crucial that the Debtor retain the Key Employees to be able to achieve the best results possible in the sale process.

Given that retention of these Key Employees is critical to the successful sale of the Debtor's assets, the Debtor has elected to adopt the KERP for these Key Employees.  The KERP is the product of discussions by the Debtor's management and with the Debtor's Board of Directors.    The KERP would provide for each Key Employee who remains employed by the Debtor through the earlier to occur of (i) November 30, 2013 and (ii) the date upon which the Debtor terminates such Key Employee's employment without cause (the "Termination Date"), to receive, in addition to such employee's current base salary, a one-time retention payment (the "Retention Bonus") of one month of such employee's base salary payable no later than thirty (30) days after such Key Employee's Termination Date.  Without the KERP, the Debtor believes that the Key Employees will leave the Debtor's employment, which would jeopardize the Debtor's sale process.  Moreover, the KERP will provide additional motivation for these Key Employees to undertake the substantial responsibilities that they have been assigned in connection with assisting existing customers in either returning their data or transitioning their data to alternative data storage providers (the "Transition").    Accordingly, the Debtor submits that implementation of the KERP is essential to its efforts to maximize the value of the estate.

2

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The predicates for the relief requested herein are sections 105(a), 363(b)(1) and 503(c)(3) of the Bankruptcy Code.

## BACKGROUND

### A.      General Background

2.      On October 1, 2013 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor is continuing in possession of its property and managing its business as debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.   No trustee or official committee of unsecured creditors has been appointed as of the filing of this Motion.

3.      The events leading up to the Petition Date and the facts and circumstances further supporting the relief requested herein are set forth in the *Declaration of Debra Chrapaty in Support of Chapter 11 Petition and First Day Motions* (the "First Day Declaration") [D.I. 13].

### B.      The  Sale and Transition Process

4.      Prior to the Petition Date, over the past three months, the Debtor's management has held discussions with potential strategic acquirers in an effort to find a buyer for the Debtor or its assets (the "Prepetition Marketing Process").  Despite the expressed interest of a number of parties in the Debtor's business, the Debtor was unable to agree on the terms of a sale prior to the filing of this chapter 11 case.  During this time, the Key Employees have not only had to fulfill their day to day obligations, but they have also been burdened with the additional responsibilities of responding to due diligence requests of potential buyers as well as assisting with the Transition.

3

**RELIEF REQUESTED**

5.      By this Motion, the Debtor seeks entry of an order under sections 105(a), 363(b)(1) and 503(c)(3) of the Bankruptcy Code: (a) approving the KERP described herein; and (b) authorizing the Debtor to implement the KERP.

**THE KEY EMPLOYEE RETENTION PLAN[2]**

6.      The KERP is designed to incentivize the Key Employees,[3] who are essential to maintaining the operation of the Debtor's business and whose continued employment is crucial to (i) assisting with the Transition, and (ii) responding to diligence requests of potential buyers of the Debtor's assets.  The KERP is memorialized in a form letter (the "KERP Letter") that the Debtor plans to send to Key Employees if this Court approves the KERP.  Personalized letters substantially in the form of the KERP Letter annexed hereto as Exhibit B will be sent to the Key Employees should the relief requested in this Motion be granted.  The Key Employees, who perform a variety of essential functions (including finance/accounting functions, technicians and engineers, and customer support), have unique and specialized knowledge regarding the Debtor's assets, as well as relationships with the Debtor's customer base and vendors that are critical to the Debtor as it attempts to maximize the value realized from the sale of its business.

7.      Pursuant to the KERP, the Key Employees will continue to perform their duties through their respective Termination Dates.  In exchange for their continued efforts and pursuant to the terms of the KERP, the Key Employees will be eligible to receive the Retention Bonus. The total potential aggregate amount of the Retention Bonuses is $89,000.

---

[2]    The descriptions herein are qualified in their entirety by reference to the KERP Letter (defined below). To the extent there is a discrepancy between the terms of the KERP Letter and the descriptions contained herein, the terms of the KERP Letter shall control.

[3]    The Debtor is prepared to provide additional, confidential information to the Court and/or the United States Trustee upon request regarding the positions held by and specific amounts for each of the Key Employees.

52238/0001-9959386v1

## BASIS FOR RELIEF

A.    **The KERP Satisfies the Standards of Sections 363(b)(1) and 503(c)(3) of the Bankruptcy Code**

8.    Section 363(b)(1) of the Bankruptcy Code permits a debtor in possession to use property of the estate "other than in the ordinary course of business" after notice and a hearing. 11 U.S.C. § 363(b)(1).  Use of estate property outside the ordinary course of business may be authorized if the debtor demonstrates a "sound business purpose" for it.  See In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a 363(b) application expressly find from the evidence presented before him . . . a good business reason to grant the application."); In re Delaware & Hudson Ry., Co., 124 B.R. 169, 179 (D. Del. 1991).  Here, the KERP serves a sound business purpose.  As detailed above, the KERP is designed to ensure that the Key Employees, whose expertise, knowledge and relationships are essential to the Debtor realizing the highest value possible for its assets in the section 363 sale process, remain with the Debtor through the Transition and sale process.  As such, the KERP is tailored to increase the value of the Debtor's estate.

9.    Once a debtor articulates a valid business justification for a particular form of relief, the Court reviews the debtor's request under the "business judgment rule." The business judgment rule "is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).

10.    The business judgment rule is recognized in chapter 11 cases and shields the decisions of a debtor's management.  See id.; see also Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996) (noting that under normal circumstances, courts defer to a trustee's judgment concerning use of property under section 363(b) of the Bankruptcy Code when there is

5

a legitimate business justification); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (D. Del. 1999) (affirming bankruptcy court approval of key employee retention program, stating that "in determining whether to authorize the use, sale or lease of property of the estate under [section 363(b)], courts require the debtors to show that a sound business purpose justifies such actions"); In re Johns-Manville Corp., 60 B.R. 612, 615-616 (Bankr. S.D.N.Y. 1986) (a "presumption of reasonableness attaches to a Debtor's management decisions" and courts will generally not entertain objections to the debtor's conduct after a reasonable basis is set forth).

11.    In addition, section 503(c) of the Bankruptcy Code provides criteria for courts to use in approving certain types of payments to insiders and "other transfers or obligations that are outside the ordinary course of business." Section 503(c) of the Bankruptcy Code contains three subsections: (1) a general prohibition against retention plans for insiders; (2) limitations on severance payments to insiders; and (3) standards governing other transfers to certain officers, employees and consultants, among others, that are outside of the ordinary course of business. See 11 U.S.C. § 503(c).

12.    Neither section 503(c)(1) nor section 503(c)(2) of the Bankruptcy Code is applicable to evaluating the KERP. By the statute's plain language, section 503(c)(1) of the Bankruptcy Code pertains solely to retention plans of insiders. None of the Key Employees is an "insider" of the Debtor, within the meaning of section 101(31) of the Bankruptcy Code, as none of the Key Employees is a director, officer, person in control, or general partner of the Debtor, nor is any Key Employee a relative of any director, officer, person in control, or general partner of the Debtor. See 11 U.S.C. § 101(31). Section 503(c)(2) of the Bankruptcy Code addresses only the requirements for severance plans for insiders, and, thus, neither section 503(c)(1) or section 503(c)(2) is applicable to the KERP. Where neither section 503(c)(1) or 503(c)(2) apply to proposed payments to management and employees, courts may consider whether such proposed payments are permissible under section 503(c)(3). In re Dana Corp., 358 B.R. 567,

6

576 (Bankr. S.D.N.Y. 2006). Section 503(c)(3) provides, in relevant part:

> (c)  Notwithstanding [section 503(b) of the Bankruptcy Code], there shall neither be allowed, nor paid –
>
>    … (3) other transfers or obligations that are outside of the ordinary course of business and not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefit of, officers, managers, or consultants hired after the date of the filing of the petition.

11 U.S.C. § 503(c)(3). Courts have generally used a form of the "business judgment" standard to determine whether the "facts and circumstances" standard of section 503(c)(3) of the Bankruptcy Code has been satisfied. See, e.g., In re Dura Automotive Systems, Inc., Case No. 06-11202 (KJC) Transcript of April 25, 2007 Hearing, at 40:17-41:12 (Bankr. D. Del. Oct. 30, 2007) (noting that section 503(c)(3) standard is "something above the business judgment standard but maybe not much farther above it . . . "); In re Nobex Corp., Case No. 05-20050 (CSS) (Bankr. D. Del. Dec. 1, 2005 (noting that section 503(c)(3) standard is "nothing more than a reiteration of the standard under 363 . . . the business judgment of the debtor . . ."); In re Riverstone Networks, Inc., No. 06-10110 (CSS) (Bankr. D. Del. Mar. 28, 2006) (same); In re Pliant Corp., No. 06-10001 (MFW) (Bankr. D. Del. Mar. 14, 2006) (same).

13.    Here, the KERP satisfies the business judgment standards of section 363(b)(1) and 503(c)(3) of the Bankruptcy Code. First, as discussed above, the KERP was adopted by the Debtor following consideration and evaluation of the Debtor's needs in conducting its sales process and the Transition. The Debtor ultimately decided to adopt the KERP because the success of the sale process and this case will depend in large part on the skills and institutional knowledge of the Key Employees and their willingness to work with the same level of diligence as they have to date, notwithstanding that (a) the Debtor has filed for chapter 11 protection and (b) the Debtor is seeking to sell substantially all of its assets to a third-party. Absent the relief requested herein, the Key Employees would likely, and understandably, begin to search for

alternative employment opportunities promising long-term stability as each of the Key Employees possesses transferrable and in-demand skills. Such an outcome would be extremely damaging to the Debtor, which might, for this reason alone, be unable to consummate a sale of its assets to a third-party.

14.     Second, the overall cost of the KERP, approximately $89,000, is reasonable in light of the size of the Debtor's estate. Moreover, the cost of the KERP is reasonable when compared with the potential harm to the Debtor's estate and existing customer data if the Key Employees are not present to assist in the Transition. In addition, the loss of the specialized skills and institutional knowledge of the Key Employees would be damaging to the Debtor and its ability to complete a sale of its assets. It is highly unlikely that the Debtor could locate, much less hire, replacements for the Key Employees given the Debtor's filing of this chapter 11 case and the expedited sale timeframe being required of the Debtor's secured postpetition lenders. The costs, delay, and disruption associated with an attempt to hire outside personnel and train them regarding the Debtor's operations during the sale process would far outweigh the cost of the KERP.

15.     Third, the Debtor also expects the KERP to have positive effects on the Key Employees' morale and their productivity, as the adoption of the KERP sends a message to the Key Employees that their efforts during the sale process are valued by the Debtor and will be rewarded. Moreover, approval of the KERP will provide the Key Employees with a greater sense of financial security, thereby eliminating a potential distraction that could adversely affect performance. Accordingly, the KERP is designed to ensure that the Key Employees remain dedicated and committed to the success of the Debtor and its sale process.

**B.     Approval of the KERP is Also Warranted Under Section 105(a) of the Bankruptcy Code**

16.     Approval of the KERP is also warranted under section 105(a) of the Bankruptcy

8

Code, which allows the Court to enter any order "that is necessary to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). This includes an order designed to preserve the value of the debtor's estate. See, e.g., In re Adelphia Communications Corp., 2003 WL 21297258, at *4 (S.D.N.Y. June 4, 2003) ("Section 105 of Title 11 provides the bankruptcy courts with a broad range of equitable powers over cases within its jurisdiction."). As explained above, the KERP is designed to preserve the assets available for distribution.

17. The establishment of non-insider employee retention plans has been authorized by courts in this district. See, e.g., In re Immunology Partners Inc., Case No. 12-13259 (BLS) (Bankr. D. Del. January 11, 2013) (approving limited employee retention plan in connection with sale process); In re Filene's Basement, LLC, et al., Case No. 11-11351 (KJC) (Bankr. D. Del. Jan. 17, 2012) (approving limited, wind-down employee retention plan); In re Mervyn's Holdings, LLC, et al., Case No. 08-11586 (KG) (Bankr. D. Del. Oct. 30, 2008) (approving retention plan for non-insiders and incentive plan for debtor's chief financial officer); In re Homebanc Mortgage Corp., et al., Case No. 07-11079 (KJC) (Bankr. D. Del. Sept. 20, 2007) (approving non-insider employee retention plan); In re New Century TRS Holdings, et al., Case No. 07-10416 (KJC) (Bankr. D. Del. May 25, 2007) (approving sale-related retention and incentive pay to certain non-management employees).

18. For the foregoing reasons, the Debtor respectfully submits that the implementation of the KERP is an appropriate exercise of the Debtor's business judgment, is necessary and in the best interest of the Debtor, its creditors, and its estates, and should be approved under sections 105(a), 363(b) and 503(c)(3) of the Bankruptcy Code.

## NOTICE

19. Notice of this Motion will be given to: (a) the U.S. Trustee; (b) the parties listed on the Debtor's list of twenty largest unsecured creditors; (c) counsel to the Debtor's prepetition and postpetition secured lenders, and (d) all parties requesting notice pursuant to Bankruptcy

52238/0001-9959386v1

Rule 2002. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

20.     No previous motion for the relief sought herein has been made to this or any other Court.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court enter an order, substantially in the form annexed hereto as <u>Exhibit C</u>, granting the Motion and such other and further relief as may be just and proper.

Dated:  October 15, 2013
        Wilmington, Delaware

Respectfully submitted,

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

Norman L. Pernick (No. 2290)
Marion M. Quirk (No. 4136)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE  19801
Tel: (302) 652-3131
Fax: (302) 652-3117

Proposed Counsel for the Debtor
and Debtor-in-Possession

52238/0001-9959386v1