# **EXHIBIT A**

(DIP TERM SHEET)

## NIRVANIX, INC.

## PRIMING SUPERPRIORITY DEBTOR-IN-POSSESSION
## CREDIT FACILITY TERM SHEET

### Dated as of October 1, 2013

Reference is made to the following documents (collectively, the "Prepetition TriplePoint Documents") among Nirvanix, Inc. ("Nirvanix" or the "Debtor" or "Borrower") and TriplePoint Capital LLC ("TriplePoint") in its individual capacity, as such Prepetition TriplePoint Loan Documents have been amended from time to time: (1) Plain English Growth Capital and Accounts Receivable Loan and Security Agreement dated as of August 21, 2012, as amended by the Restructuring Agreement and Amendment dated as of January 17, 2013, and the First Amendment to Plain English Growth Capital and Accounts Receivable Loan and Security Agreement dated August 8, 2013 (collectively, the "TriplePoint Growth Capital and A/R Loan Agreement"), pursuant to which TriplePoint has made growth capital loans to Nirvanix (the "Growth Capital and A/R Loan Facility"); (2) Plain English Equipment Loan and Security Agreement dated as of August 21, 2012, as amended by the Restructuring Agreement and Amendment dated as of January 17, 2013 (collectively, the "TriplePoint Equipment Loan Agreement"; together with the TriplePoint Growth Capital and A/R Loan Agreement, collectively, the "TriplePoint Loan Agreements"), pursuant to which TriplePoint made equipment loans to Nirvanix (the "Equipment Loan Facility"); (3) Plain English Master Lease Agreement dated as of August 21, 2012, and the associated Hardware Facility Schedule, Software Facility Schedule and Summary Schedules, as amended by the Restructuring Agreement and Amendment dated as of January 17, 2013 (collectively, the "TriplePoint Equipment Lease Agreement"), pursuant to which TriplePoint leased certain items of equipment to Nirvanix (the "Equipment Lease Facility", together with the Equipment Loan Facility and the Growth Capital and A/R Loan Facility, collectively, the "TriplePoint Facilities"); and (4) Restructuring Agreement dated as of January 17, 2013, as amended by the First Amendment to Restructuring Agreement dated as of July 29, 2013, and the Second Amendment to Restructuring Agreement dated August 8, 2013 (collectively, the "TriplePoint Restructuring Agreement") pursuant to which TriplePoint agreed to (a) restructure certain of Company's obligations to TriplePoint under the Loan Agreement, Equipment Loan Agreement, Lease Agreement, Lease Facilities and the associated Loan Documents and Lease Documents and (b) make protective advances under the TriplePoint Growth Capital and A/R Loan Agreement (collectively, the "Protective Advances"). Reference is also made to the following documents (collectively, the "Prepetition KV Loan Documents"; together with the Prepetition TriplePoint Documents, the "Prepetition Loan Documents") among Nirvanix and Khosla Ventures IV, LP and Khosla Ventures IV (CF), LP (collectively, "KV"; together with TriplePoint, the "Prepetition Lenders"), as such Prepetition KV Loan Documents have been amended from time to time: (1) the Note Purchase Agreement dated August 8, 2013, (the "Bridge Loan Agreement"), pursuant to which KV agreed to make bridge loans to Nirvanix (collectively, the "Bridge Loans"); and (2) the Security Agreement dated August 8, 2013, between Nirvanix, TriplePoint as collateral agent (in such capacity, "Prepetition Collateral Agent"), and KV (the "Security Agreement"), pursuant to which KV was granted a security interest in substantially all of the assets of Nirvanix as collateral for the Bridge Loans.

This term sheet (including all schedules, annexes and exhibits hereto, this "Term Sheet" and together with the Interim Order, the Final Order and the Approved Budget, the "DIP Loan Documentation") describes certain of the principal terms and conditions of a proposed priming superpriority senior secured debtor-in-possession term credit facility (the "DIP Credit Facility") to be provided by the DIP Lenders (as defined below) to Nirvanix in connection with a case (the "Chapter 11 Case") to be filed by Nirvanix in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") pursuant to chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code") on or before October 2, 2013 (the "Target Petition Date"). The Debtor's business

operations are in the process of being wound down. The Debtor is seeking to sell its assets pursuant to section 363 of the Bankruptcy Code (collectively, the "Sale") in accordance with this Term Sheet and the DIP Loan Documentation and subject to Bankruptcy Court approval.

This Term Sheet is not an offer for the purchase, sale or subscription or invitation of any offer to buy, sell or to subscribe for any securities. The terms and conditions set forth in this Term Sheet do not constitute or create an agreement, obligation or commitment of any kind by or on behalf of any party, unless and until executed by each of the undersigned parties hereto.

| | |
|---|---|
| Borrower: | Nirvanix, Inc. |
| Guarantor(s): | None |
| DIP Lenders: | Khosla Ventures IV, LP, Khosla Ventures IV (CF), LP and TriplePoint Capital LLC[1] |
| Secured Parties: | The Prepetition Lenders and DIP Lenders, collectively. |
| Closing Date: | "Interim Closing Date" means the date on which the "Conditions Precedent to the Interim DIP Loan" set forth below are satisfied or waived by the DIP Lenders. |
| | "Final Closing Date" means the date on which the conditions precedent to the Final DIP (including, without limitation, entry of the Final Order (as defined below)) shall have been satisfied or waived. |
| Type and Amount: | A multiple draw term loan facility in an aggregate principal amount, before giving effect to the Roll Up (as defined below), in an interim amount up to $1,100,000 through the Final Closing Date, and thereafter in an amount to be agreed upon by the DIP Lenders in the sole discretion of the DIP Lenders (the "Maximum Commitment"). The initial Maximum Commitment for each of the DIP Lenders shall be: |
| | KV: $900,000 |
| | TriplePoint: $200,000, which shall be funded in an amount equal to KV's initial advances. |
| | For the avoidance of doubt, the DIP Lenders have not agreed to any funding beyond the week ending October 26, 2013, or to any funding in excess of $1,100,000. |
| Availability: | In accordance with the DIP Term Sheet, to be made available to Borrower as follows: |
| | Interim DIP Loan: A term loan facility to be available in multiple draws commencing on the Interim Closing Date in aggregate principal amounts necessary to fund the Approved Budget until the Final Closing Date (as defined below), all subject to the provisions of the DIP Term Sheet (the "Interim DIP Loan"); and |
| | Final DIP Loan: A term loan facility in an aggregate principal amount not to exceed (i) the amount of any Roll-Up (defined below); plus (ii) the Maximum Commitment (inclusive of all draws under the Interim DIP Loan), such Maximum Commitment to be made available to the Debtor |

---

[1] The DIP Lenders are also Prepetition Lenders.

|  |  |
|---|---|
|  | in multiple draws of not less than $100,000 (and not more frequently than twice a week), subject to the terms and on the conditions set forth in the DIP Loan Documentation (the "Final DIP Loan" and, collectively with the Interim DIP Loan, the "DIP Loans"). |
| Purpose: | DIP Loans will be used for (a) working capital and general corporate purposes of the Debtor, (b) bankruptcy-related costs and expenses (subject to the Carve-Out), (c) costs and expenses related to the Sale, all in accordance with the Approved Budgets (defined below) and, (d) for any other purpose agreed upon in the DIP Loan Documentation. |
|  | None of the proceeds of the DIP Loans shall be used in connection with the investigation (including discovery proceedings), initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the DIP Lenders or the Prepetition Lenders (in any capacity), including in connection with the validity of the liens granted to the DIP Lenders and the Prepetition Lenders, except an investigation (excluding discovery proceedings) up to the amount of $10,000 as set forth in the DIP Orders. |
| Budget and Projections: | Use of cash shall be subject to a weekly budget for the period commencing on the Target Petition Date and ending on the Outside Date (defined below), each in form and substance acceptable to the DIP Lenders in their sole and absolute discretion (the "Approved Budget"). |
|  | By not later than three (3) business days after the end of the week following the Petition Date, Borrower shall deliver to the DIP Lenders and the Prepetition Collateral Agent a variance report (an "Approved Variance Report") showing comparisons of actual results for each line item against such line item in the Approved Budget. Thereafter, Borrower shall deliver to the DIP Lenders and the Prepetition Collateral Agent, by not later than three (3) business days after the close of each weekly period after the Petition Date, an Approved Variance Report for the trailing four (4) week period (or, if fewer than four weeks have lapsed since the Petition Date, then for the trailing one, two or three week period, as applicable). |
|  | Each Approved Variance Report shall indicate whether there are any adverse variances that exceed the allowed variances, which means, in each case measured on a cumulative basis, (x) up to 10% on a line-item basis, or (y) 10% in the aggregate for all cash receipts and cash disbursements ("Permitted Variance"). |
| Priority: | All DIP Loans and other liabilities and obligations of the Borrower to the DIP Lenders under or in connection with this Term Sheet, the DIP Loan Documentation, the Interim Order or Final Order (collectively, the "DIP Obligations") shall be: |
|  | (i) pursuant to section 364(c)(1) of the Bankruptcy Code, entitled to superpriority administrative expense claim status in the Chapter 11 Case with priority over any and all administrative expenses, whether heretofore or hereafter incurred, of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code and including the proceeds of |

Avoidance Actions (as defined below) only from and after the Final Closing Date and subject to entry of the Final Order (but in all cases subject to the Carve-Out);

(ii) pursuant to section 364(c)(2) of the Bankruptcy Code, secured by a perfected first-priority lien on the Collateral (as defined below) to the extent that such Collateral is not subject to valid, perfected and non-avoidable liens as of the Petition Date (but in all cases subject to the Carve-Out);

(iii) pursuant to section 364(c)(3) of the Bankruptcy Code, secured by a perfected junior lien on the Collateral, to the extent that such Collateral is subject to valid, perfected and non-avoidable liens in favor of third parties in existence as of the Petition Date or to valid liens in existence as of the Petition Date that are perfected subsequent to such date as permitted by section 546(b) of the Bankruptcy Code, and to the extent such liens are expressly permitted in writing by the DIP Lenders in their sole and absolute discretion (but in all cases subject to the Carve-Out);

(iv) pursuant to section 364(d) of the Bankruptcy Code, secured by a perfected first priority, priming and senior security interest and lien granted to the DIP Lenders (the "Priming DIP Liens") in and on all the Collateral (but in all cases subject to the Carve-Out). All existing liens, rights and interests granted to or for the benefit of the Prepetition Lenders shall be primed and made subject to and subordinate to the Priming DIP Liens (but in all cases subject to the Carve-Out);[2] and

(v) the Priming DIP Liens shall not be subject to being treated *pari passu* with or subordinated to any other liens or security interests (whether currently existing or hereafter created), subject in each case only to permitted exceptions to the extent expressly agreed upon in writing by the DIP Lenders in their sole and absolute discretion or imposed by applicable non-bankruptcy law (collectively, the "Permitted Liens"), and the Priming DIP Liens shall be junior and subordinate to payment of the Carve-Out, as defined below.

Under the proposed Interim Order, the term "Carve-Out" means, collectively: (i) fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) or to the Clerk of the Bankruptcy Court (the "Case Administration Fees"), (ii) unpaid professional fees and expenses ("Professional Fees") payable to each professional retained by the Debtor (the "Debtor Professionals") and Creditors' Committee (collectively with the Debtor Professionals, the "Estate Professionals") that are incurred or accrued prior to the date of the occurrence of a Termination Event (as

---

[2] The Prepetition Lenders shall execute a letter agreement governing the distribution priorities amongst them with respect to the DIP Loans and any other proceeds of the Debtors' assets distributed on account of the obligations under the Prepetition Loan Documents.

|   |   |
|---|---|
|   | defined in the Interim Order), but subject to the aggregate amount not in excess of the amounts set forth for each such professional in the Approved Budget, through the week such Termination Event occurs, and ultimately allowed by the Court pursuant to sections 328, 330, 331 and 503 of the Bankruptcy Code or any order of the Court (whenever such fees may be actually incurred prior to the Termination Date), (iv) Case Administration Fees and Professional Fees incurred on or after the date of the occurrence of a Termination Event in an aggregate amount not to exceed $25,000, (collectively, the "Carve-Out"), *provided, however*, that the DIP Lenders shall not be obligated to fund any amounts in excess of the Maximum Commitment. |
| Roll-Up of Prepetition Loan Agreement: | Subject to the entry of the Final Order, on the Final Closing Date, the indebtedness of Borrower under, connection with, or with respect to the Prepetition Loan Documents, whether for borrowed money, fees, expenses, or otherwise shall be converted into DIP Loans (the "Roll-Up"), subject to customary challenge rights in favor of creditors or any statutory committee. The amount of Prepetition Obligations (as defined in the Interim Order and the Final Order) that will be subject to the Roll-Up shall be equal to one and one-half times (1.5x) the Maximum Commitment. |
| Adequate Protection: | As adequate protection, and in consideration for continuing to use Cash Collateral (as defined in the Interim Order) and subordination of the Prepetition Obligations to the DIP Loan Obligations, the Prepetition Collateral Agent (for the ratable benefit of the Prepetition Lenders) shall receive, inter alia, replacement liens and adequate protection pursuant to sections 361, 363(e), and 364(d)(I) of the Bankruptcy Code, in respect of the Prepetition Loan Agreement, which shall be junior only to (i) the claims and liens of the DIP Lenders as described under "Priority" above and (ii) payment of the Carve Out. |
| Collateral | "Collateral" means, collectively, all now owned or hereafter acquired assets and property of the Debtor and its chapter 11 estate, whether real or personal, tangible or intangible, or otherwise, and any and all proceeds therefrom, including, without limiting the generality of the foregoing, all cash, accounts, accounts receivable, inventory, property, plant and equipment, real estate, leaseholds, vehicles, general intangibles, intellectual property, customer lists, avoidance actions under chapter 5 of the Bankruptcy Code ("Avoidance Actions") (from and after the Final Closing Date and subject to entry of the Final Order), all intercompany claims, any and all proceeds arising from insurance policies (including, without limitation, policies for the benefit of directors and officers of Borrower), all claims and causes of action of the Debtor or its estate, and any and all proceeds of the foregoing assets, which "Collateral," for the avoidance of doubt, shall include, without limiting the generality of the foregoing, all assets of the Borrower that are secured pursuant to the Prepetition Loan Documents; *provided, that* the Collateral shall not include the items of Equipment owned by TriplePoint that are listed on summary schedules prepared pursuant to the TriplePoint Equipment Lease or any other equipment collateral that is subject to a validly perfected security interest of a prepetition creditor of the Debtor. |

| | |
|---|---|
| Interest Rate: | 9% per annum, with such interest payable monthly in arrears on the monthly anniversary of the Petition Date, computed based on a 360 day year. |
| Default Interest: | At all times while a default exists, principal, interest and other amounts shall bear interest at a rate per annum equal to 2% in excess of the interest rate set forth under "Interest Rate" above. |
| Maturity Date: | The DIP Loans shall mature on the earliest to occur of the following (such date, the "Maturity Date"): |

    (i) November 22, 2013 (the "Outside Date"); and

    (ii) the acceleration of any of the DIP Loans and the termination of the commitments to make the DIP Loans in accordance with the terms of this Term Sheet or the DIP Loan Documentation, as applicable (including, without limitation, the non-satisfaction of any Chapter 11 Milestone (as defined in Exhibit A to the DIP Term Sheet) by the applicable specified deadline and the non-waiver of such non-satisfaction by the DIP Lenders and the Prepetition Lenders).

| | |
|---|---|
| Optional Prepayments: | The Borrower may prepay the DIP Loans in whole or in part at any time. |
| Mandatory Prepayments: | The following amounts shall be applied, after reserving any amounts in the Approved Budget that have not yet been incurred (whether prior to or after a Sale ("Excess Sale Proceeds"), to prepay (1) first, the DIP Loans and obligations related thereto excluding the portion of the DIP Loans related to the Roll-Up and (2) next, the portion of the DIP Loans related to the Roll-Up (each, a "Mandatory Prepayment Event"): |

    (i) 100% of the Excess Sale Proceeds simultaneous with the consummation thereof; and

    (ii) 100% of the net proceeds of any other sale, certain extraordinary receipts (including tax refunds, indemnity payments, pension reversions, acquisition purchase price adjustments and insurance proceeds not included as proceeds of asset dispositions in the Approved Budget) realized by the Debtor.

The Debtor will not seek or support entry of any order that provides for a Sale of the Collateral unless (i) each of the DIP Lenders and the Prepetition Lenders consent to such Sale; and (ii) the Sale Proceeds are paid at the closing of any such Sale to the DIP Lenders and the Prepetition Lenders in accordance with the direction of the DIP Lenders and the Prepetition Lenders: (a) first, to satisfy or reduce the DIP Obligations (excluding the Roll-Up), (b) second, to satisfy or reduce the Roll-Up, (c) third, to satisfy or reduce the Adequate Protection Claim set forth in the Interim Order or Final Order (as applicable), and (d) then, to satisfy or reduce the obligations under the Prepetition Loan Documentation.

| | |
|---|---|
| Representations and Warranties: | Customary and appropriate for financings of this type. |

| | |
|---|---|
| <u>Conditions Precedent</u> | <u>Conditions Precedent to Interim DIP Loan</u>. The obligations of the DIP Lenders to make the Interim DIP Loan will be subject to satisfaction, or waiver by the DIP Lenders in their sole and absolute discretion, of the following conditions precedent: |

    (i)    the Debtor shall have timely delivered the Approved Budget to the DIP Lenders;

    (ii)    the Chapter 11 Milestones listed in <u>Exhibit A</u> hereto (collectively, the "<u>Chapter 11 Milestones</u>") shall have been satisfied by the applicable Specified Deadline;

    (iii)    the Interim Order, as entered by the Bankruptcy Court, shall not have been reversed, modified, amended, stayed or vacated, or in the case of any modification or amendment, in a manner, or relating to a matter, without the express, prior written consent of each of the DIP Lenders and the Prepetition Lenders. The Borrower shall be in compliance in all respects with the Interim Order;

    (iv)    the Debtor shall have implemented a cash management system reasonably acceptable to the Secured Parties (as defined in the Interim Order);

    (v)    the Debtor shall have insurance (including, without limitation, commercial general liability and property insurance) with respect to the Collateral in such amounts and scope as is acceptable to the Secured Parties and the Secured Parties shall have received additional insured and loss payee endorsements, as applicable, with respect thereto, in form and substance reasonably acceptable to the Secured Parties; and

    (vi)    no Event of Default shall have occurred and be continuing on the Interim Closing Date.

<u>Covenants</u>: With respect to Affirmative Covenants, customary for debtor-in-possession financings of this type and otherwise as specified in the DIP Loan Documentation; <u>provided</u> that, the Debtor shall:

    (i)    satisfy, or cause to be satisfied, each Chapter 11 Milestone on or before the applicable Specified Deadline set forth in <u>Exhibit A</u> hereto; <u>provided</u> <u>that</u>, in the event that any order specified to be entered by the Bankruptcy Court by a Specified Deadline is not entered by such Specified Deadline, or a hearing to be held by a Specified Deadline is not held by such Specified Deadline, in either case solely by reason of the unavailability of, or inaction by, the Bankruptcy Court, then the Debtor and the DIP Lenders shall negotiate in good faith for a reasonable extension of such Specified Deadline; <u>provided</u> <u>further</u> that any such extension shall not cause the Maturity Date to extend past the Outside Date without the express, prior written consent

|  |  |
|---|---|
| | (iv) incur or make any expenditure (including, without limitation, any capital expenditure), investment or other payment, other than in accordance with the Approved Budget, subject to the Permitted Variances. |
| Events of Default: | Customary for debtor-in-possession financings of this type, and subject to customary grace periods and cure periods, and materiality thresholds, all reasonably acceptable to the DIP Lenders, or as otherwise specified in the DIP Loan Documentation (collectively, "<u>Events of Default</u>"); <u>provided</u> <u>that</u> "Events of Default" shall include the following: |

(i) the occurrence of any deviation from the Approved Budget that is greater than the Permitted Variances;

(ii) failure of any of the Chapter 11 Milestones to be satisfied or, following execution of the asset purchase agreement referenced in the Chapter 11 Milestones, an indication by the buyer in writing that it does not intend to go forward with the sale;

(iii) failure by the Debtor to be in compliance in all respects with any provision of the DIP Loan Documentation;

(iv) reversal, modification, amendment, stay or vacatur of the Interim Order or the Final Order, as entered by the Bankruptcy Court, without the express, prior written consent of each of the DIP Lenders and the Prepetition Lenders;

(v) the filing with the Bankruptcy Court of a plan of reorganization or liquidation in the Chapter 11 Case that does not provide for indefeasible payment in full in cash to the DIP Lenders of the DIP Loans (including the portion of the DIP Loans related to the Roll-Up) and all other amounts outstanding under this Term Sheet on the effective date of such plan;

(vi) the appointment in the Chapter 11 Case of a trustee, receiver, examiner, or responsible officer with enlarged powers relating to the operation of the business of any Obligor (powers beyond those set forth in sections 1106(a)(3) and (a)(4) of the Bankruptcy Code);

(vii) the filing of a motion by the Debtor seeking dismissal of the chapter 11 Case or the conversion of the chapter 11 Case to a case under chapter 7 of the Bankruptcy Code;

(viii) the granting of relief from the automatic stay by the Bankruptcy Court as to any material assets of the Debtor to any other creditor or party in interest in the Chapter 11 Case;

(ix) failure of all amounts due and owing to the DIP Lenders under, in respect of or in connection with the DIP Facility to be paid in full in cash on the Maturity Date; and

(x) any provision in this Term Sheet shall cease to be binding on or enforceable against the parties hereto.

| | |
|---|---|
| Remedies Upon Default: | Upon the occurrence and during the continuance of any Event of Default under this Term Sheet or the DIP Order, subject to three (3) business days' notice to the Debtor and an opportunity to seek an expedited hearing before the Bankruptcy Court, the DIP Lenders may take all or any of the following actions without further order of or application to the Bankruptcy Court, and notwithstanding the automatic stay:<br><br>(i) declare the principal of, and accrued interest on, any outstanding DIP Loans to be immediately due and payable;<br><br>(ii) terminate any further commitment to lend to the Borrower;<br><br>(iii) set-off any amounts held as Cash Collateral (including, without limitation, in any Cash Collateral account held for the benefit of the DIP Lenders); or<br><br>(iv) without application or motion to, or further orders from, the Bankruptcy Court or any other court, and without interference from any Debtor or any other party in interest, take any other action or exercise any other right or remedy (including, without limitation, with respect to the Priming DIP Liens and Collateral) permitted under this Term Sheet, in the DIP Loan Documentation or under applicable law, including, without limitation, exercising any and all rights and remedies with respect to the Collateral or any portion thereof. |
| Other Bankruptcy Matters: | The Borrower shall indemnify, pay and hold harmless the DIP Lenders and the Prepetition Lenders (and their respective directors, officers, employees and agents) against any loss, liability, cost or expense incurred in respect of the financing contemplated hereby or the use or the proposed use of proceeds thereof (except to the extent resulting from the gross negligence or willful misconduct of the indemnified party, as determined by a final, non-appealable judgment of a court of competent jurisdiction).<br><br>The DIP Loan Documentation shall contain releases and exculpations for the DIP Lenders in respect of any matters arising prior to the Petition Date, subject to customary challenge rights in favor of creditors or any statutory committee. |
| Governing Law and Jurisdiction | The laws of the State of Delaware (except as governed by the Bankruptcy Code) shall govern this Term Sheet and the DIP Loan Documentation, except with respect to conflicts of laws. The DIP Loan Documentation will provide that the Borrower shall submit to the exclusive jurisdiction of the Bankruptcy Court and shall waive any right to trial by jury. |

**KHOSLA VENTURES IV, LP**
By: Khosla Ventures Associates IV, LLC,
a Delaware limited liability company and general partner
of Khosla Ventures IV, LP

By: _____
    David Weiden
Title:  Member

**KHOSLA VENTURES IV, LP**
By: Khosla Ventures Associates IV (CF), LLC,
a Delaware limited liability company and general partner
of Khosla Ventures IV, LP

By: _____
    David Weiden
Title:  Member

**TRIPLEPOINT CAPITAL LLC**

By: _____

Title: _____

**NIRVANIX, INC.**

By: _____

Title: _____

KHOSLA VENTURES IV, LP
By: Khosla Ventures Associates IV, LLC,
a Delaware limited liability company and general partner
of Khosla Ventures IV, LP

By: _____
    David Weiden
Title: Member

KHOSLA VENTURES IV, LP
By: Khosla Ventures Associates IV (CF), LLC,
a Delaware limited liability company and general partner
of Khosla Ventures IV, LP

By: _____
    David Weiden
Title: Member

TRIPLEPOINT CAPITAL LLC

By: _____
    James Labe
Title: Chief Executive Officer

NIRVANIX, INC.

By: _____
Title: CEO    Oct 1, 2013

**KHOSLA VENTURES IV, LP**
By: Khosla Ventures Associates IV, LLC,
a Delaware limited liability company and general partner
of Khosla Ventures IV, LP

By: _____
     David Weiden
Title: Member

**KHOSLA VENTURES IV, LP**
By: Khosla Ventures Associates IV (CF), LLC,
a Delaware limited liability company and general partner
of Khosla Ventures IV, LP

By: _____
     David Weiden
Title: Member

**TRIPLEPOINT CAPITAL LLC**

By: _/s/ James Labe_____
     James Labe
Title: Chief Executive Officer

**NIRVANIX, INC.**

By: _____
Title: _____

**EXHIBIT A**
**TO TERM SHEET**

## CHAPTER 11 MILESTONES

The obligations of the DIP Lenders to advance the DIP Loans shall be subject to the Debtor satisfying, or causing the satisfaction of, the milestones listed below (collectively, the "Chapter 11 Milestones") by the specified deadline (after taking into account any applicable cure period, the "Specified Deadlines"). The non-satisfaction of any Chapter 11 Milestone by the applicable Specified Deadline (and the non-waiver of such non-satisfaction by the DIP Lenders in their sole and absolute discretion) shall be an Event of Default under the Term Sheet and the DIP Loan Documentation.

|    | Chapter 11 Milestone | Specified Deadline |
|----|----------------------|--------------------|
| 1. | Commencement of the Chapter 11 Case and filing with the Bankruptcy Court of the DIP Motion,[1] and such other first day papers as may be approved or requested by the DIP Lenders all of which shall be in form and substance acceptable to the DIP Lenders | By October 2, 2013 (or by such later date as the DIP Lenders may agree in writing) |
| 2. | Entry by the Bankruptcy Court of the Interim Order[2] | By October 4, 2013 (or by such later date as the DIP Lenders agree in writing) |
| 3. | Execution by the buyer and the Debtor of an asset purchase agreement for the sale of the Debtor's assets in a form approved by the DIP Lenders | By October 6, 2013 (or by such later date as the DIP Lenders agree in writing) |
| 4. | Entry the Bankruptcy Court of the Final Order[3] | By October 22, 2013 (or by such later date as the DIP Lenders agree in writing) |
| 5. | Entry by the Bankruptcy Court of the Sale Procedures Order | By October 22, 2013 (or by such later date as the DIP Lenders agree in writing) |
| 6. | Auction, in accordance with the Sale Procedures Motion | By no later than 10:00 a.m. Eastern time on November 15, 2013 (or by such later date as the DIP Lenders agree in writing) |
| 7. | Entry of an order approving the Sale | November 19, 2013 (or by such later date as the DIP Lenders agree in writing) |

---

[1] "DIP Motion" means a motion, in form and substance acceptable to the DIP Lenders, to be filed in the Bankruptcy Court, pursuant to which motion the Debtor shall seek entry of the (i) Interim Order, and (ii) Final Order.

[2] "Interim Order" means an order of the Bankruptcy Court authorizing and approving the DIP Loans (including, without limitation, the Interim DIP Loan) on an interim basis, which order shall be consistent with the terms of this Term Sheet and be in form and substance acceptable to the DIP Lenders in their sole and absolute discretion.

[3] "Final Order" means an order of the Bankruptcy Court authorizing and approving the DIP Loans on a final basis, which order shall be consistent with the terms of this Term Sheet and the DIP Loan Documentation, shall otherwise be in form and substance acceptable to the DIP Lenders in their sole and absolute discretion, and shall include provisions to be specified by the DIP Lenders to which the Debtor agree.

DOCS_SF:83941.9 49153/001