IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NIRVANIX, INC.<br><br>Debtor.[1] | : Chapter 11<br>:<br>: Case No. 13-12595 (BLS)<br>:<br>: Hearing Date (requested): December 12, 2013 at<br>: 9:30 a.m. (ET)<br>: Obj. Deadline: Dec. 6, 2013 at 4:00 p.m. (ET) |

**MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS FOR ORDER APPROVING TERM SHEET FOR SETTLEMENT
AGREEMENT BETWEEN OFFICIAL COMMITTEE OF UNSECURED CREDITORS
AND PREPETITION LENDERS**

The Official Committee of Unsecured Creditors (the "Committee") for Nirvanix, Inc. (the "Debtor"), through its undersigned proposed counsel, hereby files this motion (the "Motion") to approve the *Term Sheet for Settlement Agreement Between Official Committee of Unsecured Creditors and Prepetition Lender* (the "Term Sheet") attached hereto as **Exhibit A**, with respect to the sale of the Debtors' assets (the "Sale"), which resolves pending disputes among the Committee and TriplePoint Capital LLC ("TriplePoint"), Khosla Ventures IV, LP and Khosla Ventures IV (CF), LP (collectively, "KV"; together with TriplePoint, the "Lenders"). In support of the Motion, which is supported by the Lenders, the Committee respectfully states as follows:

**Jurisdiction**

1.  This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue of this proceeding and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409. The

---

[1] The last four digits of the Debtor's federal tax identification number are 6586. The Debtor's headquarters and mailing address is 9191 Towne Centre Drive, Suite 510, San Diego, CA 92122.

{00012660. }

statutory bases for the relief requested herein is section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

## Background

2.      On October 1, 2013 (the "Petition Date"), the Debtor filed a voluntary petition for relief under the Bankruptcy Code.  The factual background regarding the Debtor, including its history, operations, and the events precipitating the chapter 11 filing, is set forth in detail in the Declaration of Debra Chrapaty in Support of Chapter 11 Petition and First Day Motions [Docket No. 13].  The Debtor continues to manage and operate its business as a debtor in possession pursuant to Bankruptcy Code sections 1107 and 1108.

3.      On October 7, 2013, the Debtor filed the *Motion of the Debtor and Debtor in Possession Pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code for an Order (I)(A) Approving Procedures in Connection With the Sale(s) of Substantially all of the Debtors Assets; (B) Approving the Lot 1 Stalking Horse Bidder Protections; (C) Scheduling the Auction(s) and Hearing to Consider Approval of the Sale(s); (D) Approving Procedures Related to the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (E) Approving the Form and Manner of Notice Thereof; (F) Authorizing The United States Trustee to Appoint a Consumer Privacy Ombudsman, and (G) Granting Related Relief; and (II)(A) Authorizing the Sale(s) of Substantially all of the Debtors Assets Pursuant to a Successful Bidders Purchase Agreement Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (C) Granting Related Relief* (the "Sale Motion") [Docket No. 49], seeking approving of bidding procedures and seeking to conduct an auction and sell (the

"Lot 1 Sale") substantially all of the Debtor's intellectual property (the "Lot 1 Assets") and seeking to sell the Debtor's assets not included in the Lot 1 Assets (the "Lot 2 Assets").

4. On October 23, 2013, the Court entered the *Order (A) Approving Procedures in Connection With the Sale(s) of Substantially All of the Debtors Assets; (B) Scheduling Related Auction(s) and Hearing to Consider Approval of Sale; (C) Approving Procedures Related to the Assumption and Assignment of Certain of Debtors Executory Contracts and Unexpired Leases; (D) Approving the Form and Manner of Notice Thereof; and (E) Granting Related Relief* (the "Bid Procedures Order") [Docket No. 93], scheduling an auction of the Lot 1 Assets, if necessary, for November 15, 2013 and scheduling a sale hearing for November 19, 2013 (the "Sale Hearing").

5. On November 4, 2013, the United States Trustee appointed the Committee.

6. On November 13, 2013, the Committee filed the *Motion to Continue Sale of Assets and Date of Auction* (the "Motion to Continue") [Docket No. 144] and a related motion to shorten [Docket No. 145]. On November 14, 2013, the Court held a telephonic hearing on the Motion to Continue at which it denied the Motion to Continue without prejudice pending the November 19, 2013 Sale Hearing such that the Committee could seek an adjournment of the Sale depending on the record presented at the Sale Hearing.

7. On November 15, 2013, the Committee filed the *Objections and Responses to the Sale of Debtors Acquired Assets* (the "Sale Objection") [Docket No. 166], reiterating its request that the Court adjourn the Sale Hearing.

8. Before the Sale Hearing, the Lenders and the Committee discussed a resolution of the issues relating to the Lot 1 Sale and ultimately reached a settlement, the terms of which are

set forth in the Term Sheet. The Committee and the Lenders put the principal terms of the Term Sheet on the record at the Sale Hearing subject to Court approval after the filing of a motion.

9. In accordance with the terms of the Term Sheet, the Committee withdrew its objections to the Lot 1 Sale at the Sale Hearing and expressed support for the Sale Motion.

10. On November 19, 2013, the Court entered the *Order (A) Authorizing the Sale of Certain of the Debtors Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests, Except as Provided in the Successful Bidders Purchase Agreement; (B) Authorizing and Approving Purchase Agreement Related Thereto; (C) Approving the Assumption and Assignment of Certain of the Debtors Executory Contracts Related Thereto; and (D) Granting Related Relief* [Docket No. 182] (the "Lot 1 Sale Order").

11. On November 20, 2013, in accordance with the terms of the Term Sheet, the Committee withdrew its Sale Objection [Docket No. 186].

**The Proposed Term Sheet**

12. The Term Sheet represents an agreement between the Lenders and the Committee to resolve disputes regarding the Lot 1 Sale and to allocate proceeds derived from the Lot 1 Sale to fund the GUC Trust (defined below). The Committee and the Lenders will file a final settlement agreement before the hearing on the Motion. The principal terms of the Term Sheet are summarized below:[2]

   i. The Committee will withdraw its objection to the Sale Motion and affirmatively support entry of the Lot 1 Sale Order.

   ii. The Lenders agree to carve out from first tranche of sale proceeds $100,000 for the benefit of general unsecured creditors (the "Carve Out Funds"). The Carve Out Funds will be transferred to a General Unsecured Creditors Trust ("GUC Trust").

---

[2] The following is only a summary of the Term Sheet. Any inconsistency between this summary and the Term Sheet shall be resolved in favor of the Term Sheet.

{00012660. }                                4

      iii.      The Lenders agree to carve out from holdback/purchase price adjustment $100,000 for the benefit of general unsecured creditors ("Backend Carve Out"), provided, however, that if there is a purchase price adjustment, the Backend Carve Out will be reduced *pro rata*. The Backend Carve Out Funds will be transferred to a GUC Trust.

      iv.      Khosla Ventures will agree to subordinate/turnover all of its distributions from the GUC Trust on account of the Lenders' deficiency claims to trade creditors. TriplePoint Capital, LLC agrees to subordinate/turnover the distributions on account of its deficiency claims under the (a) Growth Capital and A/R Loan Agreement, (b) the Equipment Loan Agreement, and (c) any amounts over $200,000 (the "TPC Claim") under the Equipment Lease Agreement and Equipment Lease Facility (each as defined in the final debtor in possession financing order entered in this case). The TPC Claim shall be deemed allowed.

      v.      The Lenders will release their liens against the avoidance actions for the benefit of the GUC Trust and will agree to subordinate/turnover their distributions on the avoidance actions to trade creditors.

      vi.      The Challenge period as defined in ¶ 15 of the *Final Order (i) Authorizing Debtor to Obtain Postpetition Secured Financing, (ii) Authorizing Use of Cash Collateral, (iii) Granting Adequate Protection, (iv) Granting Certain Related Relief* [Docket No. 92] is deemed to expire on date of entry of the Lot 1 Sale Order.

      vii.      The Committee Professional fees from the estate are capped at $80,000.[3] The trustee of the GUC Trust, who will be selected by the Committee, may incur fees and expenses payable from the assets of that Trust.

### Basis for the Relief Requested

**A.**    **Standard for approval of settlements**

13.    The Third Circuit has emphasized that "to minimize litigation and expedite the administration of a bankruptcy estate 'compromises are favored in bankruptcy.'" *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 COLLIER ON BANKRUPTCY ¶ 9019.03[1] (15th ed. 1993)); *see also In re Culmtech, Ltd.*, 118 B.R. 237, 238 (Bankr. M.D. Pa.

---

[3] By agreement of the parties to the settlement, paragraph 7 of the term sheet is to be revised by the Court's Order on this motion to include the following language: "To the extent any Committee Professional is retained by the trustee for the GUC trust, any fees paid by the GUC trustee to any such Committee Professional are specifically not included in the $80,000 cap."

{00012660. }    5

1990) ("[C]ompromises are favored in bankruptcy and … much of litigation in bankruptcy estates results in settlements"). Bankruptcy Rule 9019 authorizes a bankruptcy court to approve a compromise or settlement after notice and a hearing, FED. R. BANKR. P. 9019(a), and section 105 of the Bankruptcy Code empowers a court to issue any order that is "necessary or appropriate." 11 U.S.C. § 105(a).

14. "[T]he authority to approve a compromise settlement is within the sound discretion of the bankruptcy court." *In re Key3Media Group, Inc.*, 336 B.R. 87, 92 (Bankr. D. Del. 2005); *see also In re Louise's, Inc.,* 211 B.R. 798, 801 (D. Del. 1997). When exercising such discretion, the bankruptcy court must determine whether the compromise is "fair, reasonable, and in the best interests [sic] of the estate." *Key3Media Group*, 336 B.R. at 92; *see also Fry's Metals, Inc. v. Gibbons (In re RFE Industries, Inc.)*, 283 F.3d 159, 165 (3d Cir. 2002); *In re Louise's, Inc.*, 211 B.R. at 801; *In re Marvel Entertainment Group, Inc.*, 222 B.R. 243, 249 (Bankr D. Del. 1998).

15. The bankruptcy court is not required to determine that the proposed settlement is the best possible compromise. *Key3Media Group*, 336 B.R. at 92-93 (citing *In re Coram Healthcare Corp.*, 315 B.R. 321, 329 (Bankr. D. Del. 2004)). Rather, the settlement should be approved as long as it does not fall below the lowest point in the range of reasonableness. *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir.), *cert. denied*, 464 U.S. 822 (1983). In this respect, it is unnecessary for the court to consider the information necessary to resolve the factual dispute, nor is necessary for the bankruptcy court to "conclusively determine

claims subject to a compromise." *Key3Media Group*, 336 B.R. at 92 (quoting *Martin*, 212 B.R. 316, 319 (8th Cir. B.A.P. 1997)).

16. Courts consider the following four factors when determining whether a settlement is in the best interest of the estate: (i) the probability of success in the litigation; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attendant thereto; and (iv) the paramount interest of the creditors and a proper deference to their reasonable opinions. *Martin*, 91 F.3d at 393; *Aetna Casualty & Surety v. Jasmine, Ltd. (In re Jasmine, Ltd.),* 258 B.R. 119, 123 (Bankr. D.N.J. 1999); *Key3Media Group*, 336 B.R. at 93; *Marvel*, 222 B.R. at 249.

B. **Application of the *Martin* factors**

17. Application of the *Martin* factors support approval of the Term Sheet under the circumstances.

18. First, litigation could be uncertain, costly, and time consuming. Litigation among the Committee, the Lenders, and the Debtor over issues relating to the Lot 1 Sale and the Debtor's assets would be complex, protracted and costly. The outcome of such litigation is highly uncertain. The Term Sheet allows the Lot 1 Sale to conclude unencumbered by any litigation and provides certainty that unsecured creditors will receive distributions from non-estate property. The Committee has not yet fully evaluated the merits of any claims it may have and the merits of a challenge to the Lot 1 Sale, and the ultimate result of any such challenge is currently unknown. If the Term Sheet is not approved, unsecured creditors would have to trade the certainty of the distributions contemplated under the Term Sheet for the uncertainty of

whether they would receive any recoveries at all given the circumstances of the Debtor's chapter 11 case. Thus, the Committee believes that the return to unsecured creditors is maximized based on the distributions contemplated under the Term Sheet, while the Debtor avoids protracted litigation of an uncertain outcome that would act as a drain on the estate.

19.     Second, approval of the Term Sheet is in the best interests of the estate because it will fully and finally resolve the pending disputes between the Committee and the Lenders regarding the Debtors' sale of the Lot 1 Assets, while also ensuring a recovery to unsecured creditors. Unsecured creditors will benefit greatly if the Term Sheet is approved. The GUC Trust would receive cash from sale proceeds plus the value of the avoidance actions and any recovery from such actions. While the outcome of any litigation on the avoidance actions is difficult to quantify, the Committee believes that, after giving effect to the various potential claims and causes of action, the potential defenses available to defendants, and costs of collection of any judgments obtained against any defendants, the avoidance actions may provide significant additional value to the GUC Trust in addition to the funds already provided by the Lenders. The aggregate amount of allowed general unsecured claims has not yet been determined and is ultimately subject to the claims reconciliation and allowance process. However, based on the Term Sheet, the Lenders are anticipated to be some of the largest unsecured creditors based on deficiency claims and the Term Sheet provides for subordination/turnover of any distribution from the GUC Trust on account of such deficiency claims by the Lenders, subject to certain conditions. And the Committee's professional fees are capped under the Term Sheet such that

the estate is not burdened significantly with substantial administrative claims for professional fees.

20.    Further, in order to effectuate the purpose and intent of the settlement, the parties to the settlement agree that upon the date of entry of this Order, all rights to pursue, recover and receive monetary sums from any avoidance action rights held by the Debtor's bankruptcy estate should be immediately vested in the GUC Trust.

21.    Thus, the Committee believes that the Term Sheet represents the best opportunity to maximize value for unsecured creditors and avoid costly and time-consuming litigation that could further drain the estate.   Thus, the Term Sheet and the proposed compromises contemplated thereby satisfy the *Martin* factors and should be approved.

## Notice

22.    Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) counsel for the Debtors, (iii) counsel for the DIP Lenders; and (iv) all parties that have requested notice in this case pursuant to Bankruptcy Rule 2002.  The Committee submits that, under the circumstances, no other or further notice is required.

WHEREFORE, the Committee respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit B**, granting the Motion, and grant such other and further relief as the Court may deem just and proper.

Dated: November 14, 2013
      Wilmington, Delaware

**THE ROSNER LAW GROUP LLC**

*/s/ Julia Klein*
Frederick B. Rosner (DE 3995)
Scott J. Leonhardt (DE 4885)
Julia B. Klein (DE 5189)
824 Market Street, Suite 810

Wilmington, DE 19801
Tel.: (302) 777-1111
rosner@teamrosner.com
klein@teamrosner.com

- and -

**BRINKMAN PORTILLO RONK PC**

Daren Brinkman (Cal. State Bar No. 158698)
Laura J. Portillo (Cal. State Bar No. 186813)
Kevin C. Ronk (Cal. State Bar No. 241598)
David H. Oken (Cal. State Bar No. 175219)
4333 Park Terrace Drive, Suite 205
Westlake Village, California 91361

*Proposed Counsel for the Committee of Unsecured Creditors*