IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Nirvanix, Inc., | : | Case No. 13-12595 (BLS) |
| | : | |
| Debtor. | : | |

Obj. Deadline: Dec. 6, 2013
Hearing Date: Dec. 12, 2013 at 9:00 a.m.

**UNITED STATES TRUSTEE'S OBJECTION TO MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ORDER APPROVING TERM SHEET FOR SETTLEMENT AGREEMENT BETWEEN OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND PREPETITION LENDERS**

In support of her objection to the Motion of the Official Committee of Unsecured Creditors for Order Approving Term Sheet for Settlement Agreement Between Official Committee of Unsecured Creditors and Prepetition Lenders (the "Motion"), Roberta A. DeAngelis, the United States Trustee for Region 3 ("U.S. Trustee"), by and through her undersigned counsel, states as follows:

1. This Court has jurisdiction to hear this Objection.

2. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with the administrative oversight of cases commenced pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

3. Pursuant to 11 U.S.C. § 307, the U.S. Trustee has standing to be heard with regard to this Objection.

## Background

4. On October 1, 2013, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5. On November 4, 2013, the U.S. Trustee appointed an official committee of unsecured creditors (the "Committee") in this case.

## Preliminary Statement

6. To the extent that the proposed settlement seeks authority to make distributions to unsecured creditors outside of the plan process, it should be rejected. The settlement proposed in the Motion turns the Bankruptcy Code's priority scheme on its head by allowing general unsecured creditors to receive consideration in exchange for the release of <u>estate</u> property while leaving priority creditors to ponder the question of how their claims are going to get paid in full. Specifically, the Bankruptcy Code's priority structure dictates that allowed claims senior in priority will be accounted for prior to general unsecured creditors receiving a distribution. In addition, the settlement may not result in a distribution to unsecured creditors in the event this case converts to a case under chapter 7 as no provisions are provided therein regarding who will be responsible for the distribution of these funds.

<u>The Motion</u>

7. As reflected in the Motion, the Committee and the Lenders have agreed to a

settlement, as memorialized in the term sheet attached to the Motion (the "Term Sheet").[1] The Term Sheet provides for certain amounts to be paid by the Lenders to a trust established by the Committee for the benefit of the holders of allowed general unsecured claims ("GUC Trust"). The Lenders will also transfer avoidance actions to the GUC Trust.

**Argument**

The Settlement Is Not Fair and Reasonable as It Violates the Principle Underlying Armstrong

8. In the Term Sheet, the Lenders have agreed to a gift of the funds described in the Motion to be paid to the GUC Trust for the exclusive benefit of the general unsecured creditors. In exchange, the Lenders and the Committee have agreed allow the challenge period in the Debtor's DIP financing order to expire, resulting in the waiver or release of all estate claims against the Lenders. General unsecured creditors will be entitled to share in the GUC Trust whether or not administrative claims or priority general unsecured claims are satisfied in full. The Committee does not have any claims that it is asserting against the Prepetition Lenders other than claims that properly belong to the estate under 11 U.S.C. § 541, including any rights that would inure to the benefit of the estate under 11 U.S.C. § 551.

9. The Term Sheet does not make any provision for administrative or priority claims. No claims bar date has been set in the case and the claims resolution process has not been completed. As a result, the amount of such allowed claims is unknown, and such creditors are left with the possibility of receiving a recovery only after the Debtor's lenders are paid and after the general unsecured creditors receive payment from the GUC Trust.

10. In *In re Armstrong World Industries, Inc.*, 432 F.3d 507 (3d Cir. 2005), the

---

[1] The Motion indicates that the Committee and the Lenders will file a final settlement agreement before the hearing on the Motion. The U.S. Trustee reserves all rights to object to and/or comment on the final settlement agreement when filed.

United States Court of Appeals for the Third Circuit affirmed the United States District Court for the District of Delaware's rejection of a proposed chapter 11 plan of reorganization on grounds that it violated the absolute priority rule, codified at 11 U.S.C. § 1129(b)(2)(B). The rule provides that "the holder of any claim or interest that is junior to the claims of [an impaired dissenting] class [of creditors under a plan] will not receive or retain under the plan on account of such junior claim or interest any property." 11 U.S.C. § 1129(b)(2)(B). In *Armstrong*, the proposed plan provided for the distribution of warrants to Armstrong's direct/indirect parent companies and equity interest holders (Class 12) through a class of asbestos personal injury claimants (Class 7) if unsecured creditors (Class 6) rejected the plan. *See Armstrong*, 432 F.3d at 509. In other words, if Class 6 rejected the plan, Class 7 would get the warrants, but would immediately waive receipt of the warrants, and the warrants would issue to Class 12. *See id.* Classes 6 and 7 shared the same priority under the Bankruptcy Code, and both classes were senior in priority to Class 12. *See id.* Class 6 voted to reject the plan. *See id.* at 510.

11.     The official committee of unsecured creditors in *Armstrong* objected to the plan on grounds that it violated the absolute priority rule. *Armstrong*, 432 F.3d at 510. This Court confirmed the plan and found that Class 7's hand-off of the warrants to Class 12 was permissible. *See id.* The official committee of unsecured creditors filed objections to the proposed findings of fact and conclusions of law with the District Court. *See id.* On *de novo* review, the District Court denied confirmation of the proposed plan. *See In re Armstrong World Indus., Inc.*, 320 B.R. 523 (D. Del.) (Robreno, J.), aff'd, 432 F.3d 507 (3d Cir. 2005).

12.     The District Court ultimately found that the proposed transfer of the warrants from Class 7 to Class 12 violated the absolute priority rule. *Armstrong*, 320 B.R. at 539-40.

In arriving at its conclusion, the District Court concluded that

> [I]n any event, to the extent that *In re WorldCom*, *In re Genesis Health Ventures*, and *In re MCorp Financial* read *SPM* to stand for the unconditional proposition that 'creditors are generally free to do whatever they wish with the bankruptcy dividends they receive, including sharing them with other creditors, so long as recoveries received under the [p]lan by other creditors are not impacted,' without adherence to the strictures of 11 U.S.C. § 1129(b)(2)(B)(ii), <u>that contention is flatly rejected here</u>. *Id.* (emphasis added).

The Third Circuit affirmed the District Court's ruling and, in doing so,

> adopt[ed] the District Court's reading of [the *SPM* line of cases] and agree[d] that they do not stand for the unconditional proposition that creditors are generally free to do whatever they wish with the bankruptcy proceeds they receive. Creditors must also be guided by the statutory prohibitions of the absolute priority rule, as codified in 11 U.S.C. § 1129(b)(2)(B).

*Armstrong*, 432 F.3d at 514.

13.    Like the plan that was rejected in *Armstrong*, the Motion should be rejected here. The moving parties should not be able to transfer value to general unsecured creditors at the expense of priority creditors in contravention of 11 U.S.C. § 1129, by means of a settlement motion filed pursuant to Federal Rule of Bankruptcy Procedure 9019 or by other means.

<u>The Settlement Agreement is Unfair to Priority Creditors</u>

14.    The focus of a chapter 11 proceeding is confirmation of a reorganization plan. In order to confirm a plan, the plan proponent must treat allowed administrative and priority claims consistent with 11 U.S.C. § 1129(a)(9). While the Term Sheet may be favorable to

the Committee, the Term Sheet is neither fair nor equitable to the Debtor's estate. The Term Sheet will potentially enable the Committee to deliver property to general unsecured creditors on account of their claims ahead of priority creditors by circumventing the protections afforded priority creditors under 11 U.S.C. § 1129(a)(9).

15. In *Motorola, Inc. v. Official Comm. Of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452 (2d Cir. 2007), the Second Circuit Court of Appeals held that, in evaluating a Rule 9019 pre-plan settlement, the primary factor the bankruptcy court must consider is whether the settlement is " fair and reasonable" in that it respects the Bankruptcy Code's priority scheme for the distribution of estate assets. Here, the settlement is not "fair and reasonable" as it seeks to turn the Bankruptcy Code's priority scheme on its head by allowing general unsecured creditors to receive consideration in exchange for the constructive release of estate property while leaving priority creditors to ponder the question of how their claims are going to get paid in the event a chapter 11 plan is not confirmed. *See also In re DBSD North America, Inc.,* 634 F.3d 79, 100-101 (2nd Cir. 2011).

16. In sum, assuming that the Committee successfully litigated the asserted claims and causes of action against the lenders to judgment, each and every scenario under which its constituency would be entitled to a distribution under a chapter 11 plan would necessitate satisfaction of allowed priority claims as a prerequisite to recovery. As Kenneth Klee previously observed in an article written for the American Bankruptcy Law Journal:

> [A] plan should not be permitted to be crammed down where a senior class gives up value to a junior class while skipping over an intermediate or co-equal class. Although the argument can be and has been made that senior creditors should be entitled to do what they want with their property, the lessons of history should suffice to impose a per se rule that precludes senior creditors from collaborating with junior creditors or equity

6

> security holders at the expense of intervening classes. Kenneth N. Klee, *Adjusting Chapter 11: Fine Tuning the Plan Process*, 69 AM. BANKR. L.J. 551, 570-71 (1995) (emphasis added) (cited in *Armstrong*, 320 B.R. at 540).

The Committee and Lenders should not be permitted to collaborate in these cases at the expense of priority creditors. Thus, the Motion should be denied.

17.     There are a number of troubling questions presented by the Term Sheet. Presumably, the Committee intends to distribute the funds in the GUC Trust *pro rata* on account of unsecured claims. However, the Term Sheet provides no explanation as to who shall be authorized to distribute such funds to these creditors. Such funds could not be distributed under a chapter 11 plan, unless the plan provides for the payment in full of those creditors holding claims senior to the general unsecured claimants. Furthermore, under 11 U.S.C. § 726, a chapter 7 trustee is only authorized to distribute estate funds in accordance with the priority scheme set forth in the Bankruptcy Code. The chapter 7 trustee is not authorized to distribute funds held in trust for general unsecured creditors outside of the Bankruptcy Code's priority scheme.

18.     Furthermore, to the extent that there is a dispute regarding the use of any funds under the GUC Trust, the Court does not have jurisdiction to resolve the dispute if such funds are being held in a constructive trust for the benefit of general unsecured creditors. Furthermore, if such funds are subsequently distributed outside of the rubric of a chapter 11 plan or by someone other than a chapter 7 trustee, does an unsecured creditor's acceptance of such funds satisfy the liability of the Debtor's estate to the creditor? The Court is being asked to pre-approve distributions that, in many circumstances would be contrary to the bankruptcy laws and prejudicial to other parties at a later date. Indeed, such matters are not

even ripe for judicial determination at this time, before a plan or other pleading has even been filed.

19. Two cases from this District involving similar settlements highlight the inherent practical problems with these types of settlements. In *World Health Alternatives, Inc.*, 344 B.R. 291, 297 (Bankr. D. Del. 2006), following the conversion of the case to a case under chapter 7 (and after the issuance of the Court's reported opinion approving the settlement), the official committee of unsecured creditors apparently realized the practical difficulties involved in administering such funds and was compelled to return their purported gift back to the estate for distribution in accordance with the priority scheme set forth in the Bankruptcy Code pursuant to an amended letter agreement among the committee, the debtors, Capitalsource Finance, LLC and the UST. The letter agreement was approved by the Court on September 26, 2006 (see case no. 06-10166 (PJW), docket no. 631).

20. In *PSO Successor Corp. f/k/a PSA Quality Systems (Ohio), Inc., et. al.* Bankruptcy Case No. 04-13030 (MFW), the funds were not returned to the estate following the subsequent conversion of that case to a case under chapter 7 and, upon information and belief, such funds remain suspended in a trust account because there is no person authorized to distribute such funds. Following the conversion of that case, the committee was disbanded by operation of law and the chapter 7 trustee has properly refused to administer these funds as they are non-estate assets. Even if such assets are left in the estate in this case, the chapter 7 trustee cannot distribute the money in the GUC Trust outside of the priority scheme set forth in the Bankruptcy Code.

<u>The Settlement Agreement Constitutes a *Sub Rosa* Plan</u>

21. The Motion attempts to restructure the rights of existing creditors, without

affording to any party in interest the protections and requirements of a plan, disclosure statement and confirmation procedures as contained in 11 U.S.C. §§ 1121-1129 and is contrary to the well-established rule in *In re Braniff Airways, Inc.,* 700 F.2d 935 (5th Cir. 1983). The Term Sheet has a number of features (e.g. the transfer of value to the Committee and the exchange of releases) that are similar to provisions contained in the *sub rosa* plan of reorganization that was rejected in *In re Braniff Airways, Inc.,* 700 F.2d 935 (5th Cir. 1983).

22. Under the Term Sheet, the moving parties seek authority to transfer value to the general unsecured creditors outside of the priority scheme contemplated in the Bankruptcy Code in contravention of 11 U.S.C. § 1129. Additionally, the Term Sheet involves the release of estate claims. All of the foregoing is being done via the Settlement Agreement and outside of the context of a chapter 11 plan.

WHEREFORE the U.S. Trustee requests that this Court issue an order denying the Motion as written and/or granting such other relief as this Court deems appropriate, fair and just.

Respectfully submitted,

**ROBERTA A. DeANGELIS**
**UNITED STATES TRUSTEE**

By:   */s/ Jane M. Leamy*
    Jane M. Leamy (#4113)
    Trial Attorney
    J. Caleb Boggs Federal Building
    844 King Street, Suite 2207, Lockbox 35
    Wilmington, DE 19801
    (302) 573-6491
Dated: December 6, 2013    (302) 573-6497 (Fax)