## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | : | Chapter 11 |
|---|---|---|
| In re: | : | |
| | : | Case No. 13-12595 (BLS) |
| NIRVANIX, INC. | : | |
| | : | |
| Debtor. | : | **Re: Dkt. Nos. 189, 217** |
| | : | |

**REPLY TO THE UNITED STATES TRUSTEE'S OBJECTION TO MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS FOR ORDER APPROVING TERM SHEET SETTLEMENT AGREEMENT BETWEEN THE OFFICIAL COMMITTEE OF UNSECURED
<u>CREDITORS AND PREPETITION LENDERS</u>**

### I.    INTRODUCTION

The Official Committee for Unsecured Creditors ("Committee") hereby files this Reply to the United States Trustee's ("UST") Objections ("Objections") to the Committee's Motion to for Order Approving Term Sheet for Settlement Agreement Between Official Committee of Unsecured Creditors and Prepetition Lenders ("Motion").

As set forth in detail below, the UST's Objections are simply inapplicable with respect to the terms of the settlement reached between the Committee and the Lenders.[1]  This settlement is neither a violation of the absolute priority rule nor is it a *sub rosa* reorganization plan, as asserted by the UST.  Rather, the settlement is merely a carve out by the Lenders of the <u>Lenders'</u> ultimate distribution proceeds where a portion of such proceeds will be placed in a General Unsecured Creditor Trust by the Lenders.  There is no Third Circuit decision holding that the absolute priority rule precludes secured lenders from settling with unsecured creditors utilizing funds from the Lenders' distribution of the Debtor's assets.

---

[1] For purposes of this Reply Brief, the term "Lenders" includes TriplePoint Capital LLC, Khosla Ventures IV, LP and Khosla Ventures IV (CF), LP.

{00012981. }                                                  1

Thus, this settlement does not contemplate, in any way, a violation of the absolute priority rule nor does it involve a transfer of any of the Debtor's asset values to the unsecured creditors.  Rather, the result of this settlement is the payment for unsecured claims <u>by the Lenders</u> and <u>not the Debtor</u>.

The Objections ignore the fact that this settlement presents a significant reduction of litigation costs to the Estate as a result of allowing the sale to proceed and the Committee's waiver of a right to challenge the sale.  In the case of the settlement set forth in the Committee's Motion, the Committee's is also foregoing its rights to challenge the validity of the Lenders' purported liens in return for concessions by the Lenders.  These significant concessions by the Committee are offset by the reality that there will be certainty of payment amounts for the unsecured creditors' claims.  The UST's analysis is simply wrong.

The UST submits its Objections as though this settlement modified a proposed plan that could be a rejected.  In fact, this settlement is nothing more than a compromise eliminating disputes and litigation surrounding such disputes with no impact on any potential plan or to the Debtor's assets.  Such actions are favored by the Courts.

## II.    ARGUMENT

**A.    The Funding For This Settlement Is Not From The Debtor's Assets and Does Not Violate The Absolute Priority Rule**

Contrary to the UST's assertions, the absolute priority rule is inapplicable to the settlement between the Committee and the <u>Lenders</u>.

Established case law approves the gifting of distributions when the property that is gifted is not the property of the Estate but is, rather, property of a non-debtor such as the Lenders in this matter. *In re SPM Manufacturing*, 984 F.2d 1305 (1st Cir. 1983).  The UST primarily relies on *In Re Armstrong World Industries*, 320 B.R. 523 (D. Del. 2005) to support its Objections.

{00012981. }                                                    2

However, the Third Circuit decision sets forth a clear difference between the circumstances in the *SPM* case and the *Armstrong* case. The *Armstrong* court agreed that when a secured lender allows some of its lien proceeds to be distributed to creditors, such an action is within the secured lender's "substantive right to dispose of its property." *Id.* at 538, 539. Other cases are in accord confirming that settlements, such as the one at issue in the Committee's Motion, do not affect the absolute priority rule when the secured creditors are distributing a portion of their own property. *See In re TSIC, Inc.*, 393 B.R. 71, 75-77 (Bankr. D. Del. 2008); *In re World Health Alternatives, Inc.*, 344 B.R. 291, 297-99 (Bankr. D. Del. 2006).

Cases applying the *Armstrong* case in Delaware disagree with the UST's position. *In re TSIC, Inc.,* 393 B.R. 71 (Bankr. D. Del. 2006) set forth that:

> "A lengthy discussion of the Settlement's adherence to the absolute priority rule is neither necessary nor appropriate here for the simple reason that the absolute priority rule is not violated in substance or spirit. Armstrong makes it clear that the absolute priority rule is violated when a senior class' portion of its share of estate property is allocated to a junior class over the objection of an intervening creditor class, as was the situation in Armstrong. Regardless of how one analyzes Armstrong, it is beyond cavil that Armstrong did not address a payment of property that did not belong to the estate by a non-creditor, here the Joint Venture, to a junior class outside of a plan of confirmation."

*TSIC*, 393 B.R. at 75.

All of the reductions, carve outs and avoidance action rights that are being transferred to the GUC Trust under the Term Sheet provisions are rights that are held by the <u>Lenders</u>. The Term Sheet calls for the <u>Lenders</u> to carve out funds from the distribution proceeds <u>to Lender</u> in order to establish the General Unsecured Creditors Trust ("GUC Trust"). This is the sole source of funding of the settlement between the Lenders and the Committee.

As set forth in the Term Sheet, the first $100,000 carve out from the Lender's first distribution of sale proceeds will be transferred by the <u>Lenders</u> to the GUC Trust. (Paragraph 2)

The second $100,000 carve out will be transferred by the Lenders from their holdback/purchase price adjustment. (Paragraph 3) Further, the Lenders are transferring their avoidance action rights to the GUC Trust and are subordinating/turning over their distributions from avoidance actions to the GUC Trust.

All of the foregoing rights and amounts that will be transferred to the GUC Trust are not any rights or assets of the Debtor and, therefore, the UST's reliance on cases, such as *Armstrong*, are of no consequence.

Further, the UST mistakenly relies on a Second Circuit case, *Motorola, Inc. v. Official Committee of Unsecured Creditors (In re Iridium Operating LLC)*, which is not applicable to the situation at hand. The *Motorola* case focuses on the application of the priority rule when the settlement funds come from the Debtor's assets. Such is simply not the case with respect to the settlement at issue in the Committee's Motion where the settlement funds come completely from the Lenders' share of any eventual distribution. Additionally, even though the *Iridium* case cited by the UST states that the priority rule is factor for determining the fairness and reasonableness of a settlement, as set forth above, the priority rule does not come into play with respect to settlements such as the one at issue here. Furthermore, the Second District held that where remaining factors lean towards approval of the settlement, the priority rule issue (even if it was applicable in these circumstances) would not be the arbiter of reasonableness of the settlement:

> "In the Chapter 11 context, whether a settlement's distribution plan complies with the Bankruptcy Code's priority scheme will often be the dispositive factor. However, where the remaining factors weigh heavily in favor of approving a settlement, the bankruptcy court, in its discretion, could endorse a settlement that does not comply in some minor respects with the priority rule if the parties to the settlement justify, and the reviewing court clearly articulates the reasons for approving, a settlement that deviates from the priority rule."

*In re Iridium (Motorola)*, 478 F.3d 452, 464-5 (2d Cir. 2007).

The factors in *Motorola* set forth in the Objections do, in fact, support the reasonableness and fairness of this settlement contained in the Term Sheet. First of all, there is no impact to the Debtor's assets and, therefore, no impact to any person or entity within the priority scheme (except for the settling unsecured creditors.) Moreover, the settlement provides for the payment to unsecured creditors in amounts that would likely not be attainable under any other circumstance. On the other side, the Lenders will not be faced with expensive and protracted litigation concerning their liens and/or rights to priority distributions. Interestingly, the Objections do not discuss other "factors" for approving a 9019 settlement such as the effect of the settlement on the creditors' "paramount interests" (which are satisfied as only the Lenders' net ultimate recoveries are impacted and the unsecured creditors will receive some payment for their claims), the competency and experience of counsel (the settlement parties are represented by experienced and established counsel), the settlement was negotiated "in good faith and at arms-length" (all parties received and gave up issues to reach this settlement) and there have been no objections to the settlement by the Debtor. *See In re WorldCom, Inc.,* 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006).[2]

**B.    The Term Sheet Is Not a *Sub Rosa* Plan**

The Term Sheet settlement does not constitute a *sub rosa* plan. The factors generally considered in assessing whether a transaction, typically in the context of a section 363 sale, is a *sub rosa* plan are:

(i)    when aspects of the proposed transaction dictate the terms of the ensuing plan or constrain parties in exercising their confirmation rights, such as by placing

---

[2] It must not be forgotten that the priority liens of the Lenders, both as pre-petition lenders and DIP lenders far exceeds the Estate's asset value thus it cannot be said that the settlement is not a reasonable opportunity to avoid the wasting of Debtor assets by protracted litigation and to provide the unsecured creditors with a modicum of recovery from sources other than the Debtor's Estate.

                restrictions on creditors' rights to vote on a plan;

(ii)      if the proposed transaction itself seeks to allocate or dictate the distribution of sale proceeds among different classes of creditors;

(iii)     whether the transaction restructures creditors' rights; and

(iv)     whether the transaction requires that all parties release claims against the Debtor, its officers and directors, and its secured creditors.

*See In re General Motors Corp.*, 407 B.R. 463 (Bankr. S.D.N.Y. 2009); *In re Shubh Hotels Pittsburgh, LLC*, 439 B.R. 637, 644-45 (Bankr. W.D. Pa. 2010); *see also In re Capmark Fin. Group Inc.,* 438 B.R. 471, 513 (Bankr. D. Del. 2010) (a settlement constitutes a *sub rosa* plan when the settlement has the effect of dictating the terms of a prospective chapter 11 plan; to be found to dictate the terms of a plan, the settlement must either (i) dispose of all claims against the estate or (ii) restrict creditors' rights to vote.)

      As is evidenced by the Term Sheet, the settlement will not, and does not, dictate the terms of any eventual plan in this case.  Here, the settlement does not involve the Debtor as the Debtor is not a party to the settlement agreement.  Furthermore, the Term Sheet does not contain any provision affecting the Debtor's ability to bring a plan or decide not to submit a plan.  The UST cannot point to any provision in the Term Sheet that resolves claims, impacts the voting rights of any party, impairs any creditor rights pertaining to the Estate, restricts the rights of Debtor to restructure and does not set forth any classification or categorization of claims.  All of such rights remain intact regardless of the agreements between the Lenders and the Committee.  Thus, the settlement is not a *sub rosa* plan.

      Last, the Objections miss the mark in their criticism of the handling of the trust post-confirmation.  The Term Sheet specifically provides for the appointment of a trustee for the GUC

Trust. The Trustee will not be the Chapter 7 Trustee whose fees will be paid from the Trust proceeds and not the Debtor's assets.

### C. The Term Sheet Settlement Is In The Best Interests of The Unsecured Creditors Under *In re Martin*.

The Lenders are under-secured and the unsecured creditors will not receive any recovery on their claims in this case unless this settlement is approved. Even with the court-approved sale of the Debtor's assets, the Lenders still have a large deficiency claim. The Committee believes that there is a small likelihood of success in a challenge to the liens of the Lenders. Moreover, the expense for pursuing lien challenges against the Lenders would be very costly and would delay the resolution of the Debtor's bankruptcy case. After intensive and arm's-length negotiations, the Committee and the Lenders reached agreement on the provisions set forth in the Term Sheet.

If the Term Sheet settlement is not approved, the general unsecured creditors will be considerably worse off, but so will the Debtors and the Lenders who will be faced with added expenses to the Estate.

The Committee is not required to submit evidence to the court that a better settlement could or could not have been achieved. Rather, settlement approval under Rule 9019 merely requires a demonstration that the settlement is within the ambit of reasonableness. *In re Tribune Co.*, 464 B.R. 126, 158 (Bankr. D. Del. 2011); *In re Washington Mutual,* Inc., 442 B.R. 314, 328 (Bankr. D. Del. 2011); *Nellis v. Shugrue*, 165 B.R. 115, 123 (Bankr. S.D.N.Y. 1994). Thus, "… the responsibility of the bankruptcy judge . . . is not to decide the numerous questions of law and fact raised by the appellants but rather to canvass the issues and see whether the settlement fall[s] below the lowest point in the range of reasonableness." *In re W. T. Grant Co.,* 699 F.2d 599, 608

(2d Cir. 1983); *see also In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976) (the court should not conduct a "mini-trial" on the merits of a proposed settlement.)

As set forth in the moving papers, the Term Sheet settlement obtained by the Committee satisfies the various factors set forth in *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996). The settlement with the Lenders provides for recovery to all of the unsecured creditors without impacting the Debtor's estate. If the settlement is not approved, then any monies that would have been provided to the unsecured creditors will simply stay in the possession of the Lenders. Additionally, the settlement avoids the delay and uncertainty involved in litigation relating to the Lenders liens. Moreover, the settlement clears the way for the completion of the sale of Debtor's assets and for distributions from the sale according to the bankruptcy priority scheme. It is the Committee's best judgment that this settlement is the best result that could possibly be obtained as it provides for some recovery to the unsecured creditors (not from Estate assets) as opposed to the "no recovery" outcome for the unsecured creditors that will take place if the settlement is not approved.

The UST's remaining points on the issue of whether the Term Sheet is in the best interests of creditors, and the cases cited in the UST Objection, go to whether there has been an adequate showing to approve the settlement. Here, the Committee submits that it has made an adequate showing to approve the Term Sheet Settlement because the settlement is well within the range of reasonableness and it is in the best interests of the unsecured creditors for the reasons set forth in the Motion.

**WHEREFORE,** the Committee respectfully requests that the Court grant the Committee's Motion in its entirety.

Dated: January 6, 2014  
       Wilmington, Delaware

Respectfully Submitted,

**THE ROSNER LAW GROUP LLC**

*/s/ Julia Klein*
Frederick B. Rosner (DE 3995)
Scott J. Leonhardt (DE 4885)
Julia B. Klein (DE 5189)
824 Market Street, Suite 810
Wilmington, DE 19801
Tel.: (302) 777-1111
rosner@teamrosner.com
klein@teamrosner.com

- and -

**BRINKMAN PORTILLO RONK PC**
Daren Brinkman (Cal. State Bar No. 158698)
Laura J. Portillo (Cal. State Bar No. 186813)
Kevin C. Ronk (Cal. State Bar No. 241598)
David H. Oken (Cal. State Bar No. 175219)
4333 Park Terrace Drive, Suite 205
Westlake Village, California 91361

*Counsel for the Committee of Unsecured Creditors*